T.C. Memo. 2013-25

UNITED STATES TAX COURT

RAMON REYNOSO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 5475-10, 17215-10.          Filed January 22, 2013.

<u>Russell P. Briesacker, Jr.</u>, for petitioner.

<u>Mindy S. Meigs</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  In notices of deficiency for 2006 and 2007 respondent determined the following deficiencies and additions to tax with respect to petitioner's Federal income tax:

[*2]

|  | | | Additions to tax | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654(a) |
| --- | --- | --- | --- | --- |
| 2006 | $229,591 | $51,487 | $34,324 | $10,825 |
| 2007 | 379,339 | 85,351 | 43,624 | 17,265 |

In an amended answer respondent asserted an increased deficiency and increased additions to tax for 2006. The deficiencies and additions to tax with respect to petitioner's Federal income tax in dispute are as follows:

|  | | | Additions to tax | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654(a) |
| --- | --- | --- | --- | --- |
| 2006 | $313,800 | $70,434 | $78,259 | $14,810 |
| 2007 | 379,339 | 85,351 | 43,624 | 17,265 |

After concessions,[1] the issues for decision are: (1) whether petitioner had unreported income of $207,400 and $1,055,000 for 2006 and 2007, respectively; (2) whether and to what extent petitioner is entitled to business expense deductions for the years at issue; (3) whether petitioner is liable for self-

---

[1]In a stipulation of settled issues the parties stipulated that for 2006 petitioner did not receive wages of $25,419 as set forth in the notice of deficiency and that petitioner received interest income of $20. At trial respondent conceded that petitioner is entitled to joint filing status, and the parties agreed that petitioner is entitled to three dependency exemptions for 2006.

For 2007 respondent has conceded that petitioner is entitled to a married filing separately status. At trial the parties agreed that petitioner is entitled to three dependency exemptions for 2007. With the exception of the issues addressed in this opinion, the remaining adjustments are computational.

[*3] employment tax for the years at issue; (4) whether and to what extent petitioner must recognize short-term capital gain from the sale of a property in 2006; (5) whether petitioner is entitled to joint filing status for 2007; and (6) whether petitioner is liable for additions to tax under sections 6651(a)(1)[2] and (2) and 6654 for the years at issue.[3]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this reference. Petitioner resided in California when he filed his petition.

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code), as amended and in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Some monetary amounts have been rounded to the nearest dollar.

[3]In his opening brief petitioner raised two new issues: (1) whether he is entitled to itemized deductions claimed on a Schedule A, Itemized Deductions, with respect to the real property taxes and interest related to the property he sold in 2006; and (2) if we disallow petitioner's claimed joint filing status for 2007, whether he is obligated to report only half of his income on the basis of California community property laws. With respect to petitioner's claimed itemized deductions, all of the claimed deductions related to the property he sold in 2006; accordingly, we will address his claim in part V.C. of this opinion. See infra pp. 42-43. Petitioner's community property argument relates to the 2007 filing status issue; accordingly, we will address petitioner's community property argument in part VI of this opinion. See infra note 35.

**[\*4]** I.    <u>Background</u>

Petitioner, a permanent U.S. resident, works in the construction industry. In 1999 he married Erika Avila Blanca (Mrs. Reynoso). He has seven children; Mrs. Reynoso is the mother of his three youngest children.

II.    <u>Petitioner's Property Transactions</u>

On November 27, 2005, Aida Avila, petitioner's relative, signed a grant deed transferring the title to a property at Berkshire Drive, Riverside, California (Berkshire property), to petitioner, ostensibly for no consideration.[4] Before transferring the title to petitioner Ms. Avila refinanced the Berkshire property and secured a new mortgage. Petitioner and Mrs. Reynoso moved into the Berkshire property at some point in 2005.

While residing at the Berkshire property petitioner decided to renovate and improve the property. On April 3, 2006, he secured an $85,000 loan from Money Solutions Group, which he used in part to fund renovation work on the Berkshire property, including improvements to the horse stables and driveway, installation of a tennis court and a block wall, and interior improvements, such as installation of crown molding and new flooring. On a date that is not in the record he hired Alfredo's Welding to perform welding work on the horse stables. Alfredo's

---

[4]The grant deed was not recorded until March 17, 2006.

**[\*5]** Welding had a mechanic's lien on the Berkshire property as security for payment.

On or about May 31, 2006, petitioner sold the Berkshire property for $675,000. Petitioner received a closing statement showing gross proceeds of $675,000 with respect to the sale and various payees who received proceeds from the sale. At the closing petitioner received a check for $5,243, the balance due to him after payment of various liabilities and expenses. Respondent received a Form 1099-S, Proceeds From Real Estate Transactions, from New Century Title Co. (New Century), on which New Century reported that petitioner received gross proceeds of $675,000 from the sale of the Berkshire property.

On August 14, 2006, petitioner purchased property at Ridge Point Way, Riverside, California (Ridge Point property). Petitioner and Mrs. Reynoso resided at the Ridge Point property beginning in August 2006 and throughout 2007.

III.    Petitioner's Business Activities

In 1997 petitioner began working as a contractor for Nijjar Realty, Inc., d.b.a. PAMA Management Co. (PAMA), a property management company.[5] During the years at issue he worked for PAMA as an independent contractor under

---

[5]PAMA classified petitioner as an independent contractor and not as an employee during the years at issue.

[*6] the trade names R&R Construction and Los Brothers Co., his sole proprietorship construction businesses.

During 2006 and continuing until sometime in early 2007 petitioner also worked with Peter Ortiz to provide construction services for PAMA. After petitioner ceased working with Mr. Ortiz on joint projects, Mr. Ortiz, doing business as Peter Ortiz RCI, continued to provide construction services to PAMA independently. However, Mr. Ortiz and petitioner continued to help each other on PAMA projects from time to time.

As payment for petitioner's services PAMA wrote checks to R&R Construction and Los Brothers Co. When PAMA issued a check, a PAMA employee would record the check in its vendor histories.[6] During 2006 PAMA issued 6 checks to R&R Construction and 33 checks to Los Brothers Co., totaling $21,000 and $186,400, respectively. During 2007 PAMA issued 186 checks to R&R Construction totaling $961,000.

---

[6]PAMA maintains vendor histories for each vendor. A PAMA employee enters the relevant information when PAMA issues a check to a vendor. Each entry includes the check number, amount, and date, as well as a description of the work performed, including the name of the property where the vendor performed the work. The descriptions of the work performed include the following: rehab, partial, roof or roofing, asphalt, paint or painting, decking, carports, final, workers, stucco, redesign, cement, labor, additional, wood, demolish, inspection, extra, facial, garage, mold/mildew, beams, permits, construction, and inside units.

**[*7]** Respondent did not receive any information returns with respect to petitioner's business activities for 2006. For 2007 respondent received the following information returns with respect to petitioner's business activities: (1) a Form 1099-MISC, Miscellaneous Income, from Peter Ortiz RCI reporting nonemployee compensation of $94,000; and (2) a Form 1099-MISC from PAMA reporting nonemployee compensation of $961,000.

IV.    Petitioner's Failure To Keep Records and Substantiate Business Expenses

Petitioner did not maintain any ledgers or journals in which he recorded the income and expenses of his construction businesses. He did not maintain records showing the addresses of the worksites and the materials, workers, and subcontractors required to complete the job. He did not maintain any form of payroll records.

Petitioner paid both business and personal expenses using his Bank of America accounts. See infra. He engaged in numerous cash transactions, including substantial cash deposits and withdrawals. Although petitioner paid various business expenses in 2006 and 2007 with respect to the construction work he performed for PAMA, he made minimal effort to reconstruct his business expenditures during the course of these proceedings.

[*8] V.    Petitioner's Bank Accounts

During 2006 petitioner maintained two personal bank accounts at Bank of America, account No. 1420 and account No. 1421.[7]  He did not deposit any checks from PAMA into either account during 2006.  However, petitioner made a number of large cash deposits into the accounts.  During 2006 he maintained a third bank account under the name "R&R Construction".[8]  He deposited at least some of his checks from PAMA into this third account.

From February 13 through November 21, 2007, petitioner maintained an account at Bank of America (account No. 4099) titled "Ramon Reynoso R and R Construction".[9]  From February 13 through December 24, 2007, he maintained an account at Bank of America (account No. 4098) titled "Ramon Reynoso R and R Construction".[10]  In 2007 he deposited 23 checks from PAMA, totaling $126,000,

---

[7]Petitioner made taxable deposits of $301,223 into account No. 1420 during 2006. From April 1 through December 31, 2006, he made taxable deposits of $21,700 into account No. 1421.  As of January 29, 2007, Bank of America had closed account No. 1420.

[8]The record does not contain copies of account statements or deposit slips for this third account.

[9]During 2007 petitioner made taxable deposits of $147,500 into account No. 4099, including the 23 PAMA checks.

[10]During 2007 petitioner made taxable deposits of $631,735 into account No. 4098, including the 107 PAMA checks.

**[*9]** into account No. 4099, and he deposited 107 checks from PAMA, totaling

$588,700, into account No. 4098.[11]

VI.    Notices of Deficiency

Petitioner failed to timely file tax returns for 2006[12] and 2007.[13]

Consequently, respondent prepared substitutes for returns under section 6020(b) for

2006 and 2007.  On the basis of the substitutes for returns, respondent mailed to

petitioner notices of deficiency for 2006 and 2007.

---

[11]During the years at issue petitioner also cashed a number of checks, including checks from PAMA.  He often cashed his checks at Mira Loma Market.

[12]On March 5, 2010, respondent received petitioner's Form 1040, U.S. Individual Income Tax Return, for 2006.  On the Form 1040 petitioner used a filing status of married filing jointly and listed his occupation as "construction".  He reported a total tax liability of $3,813.  He also claimed the earned income credit, the additional child tax credit, a credit for Federal telephone excise tax paid, and a refund of $1,109.

On an attached Schedule C, Profit or Loss From Business, petitioner identified his business name as R&R Construction and reported gross receipts and total expenses of $41,000 and $14,016, respectively.  He attached to his return a Form 4562, Depreciation and Amortization, relating to depreciation of vehicles purportedly used in his business activity.  On an attached Schedule D, Capital Gains and Losses, he reported a long-term gain of $24,922.  He also attached a Form 4797, Sales of Business Property, on which he reported that on May 21, 2006, he sold the Berkshire property for $675,000.  On the Form 4797 he reported a gain of $24,922 from the sale of the Berkshire property.

[13]Petitioner had not filed a Federal income tax return for 2007 as of the date of trial.

[*10] In the notice of deficiency for 2006 mailed on November 30, 2009, respondent determined that petitioner had compensation income of $25,419, interest income of $20, and a short-term capital gain of $675,000. Respondent also determined that petitioner was liable for additions to tax under sections 6651(a)(1) and (2) and 6654. Respondent determined the 2006 income tax deficiency using married filing separately filing status for petitioner.

In an amended answer respondent made further adjustments with respect to petitioner's 2006 taxable year. Respondent alleged in the amended answer that, in addition to the income items and capital gain set forth in the notice of deficiency, petitioner had unreported Schedule C gross receipts of $207,400 from work he performed for PAMA.[14] Respondent also determined that petitioner was liable for self-employment tax with respect to his income from PAMA.

In the notice of deficiency for 2007 mailed on April 26, 2010, respondent determined that petitioner had nonemployee compensation of $1,055,000 and was liable for self-employment tax with respect to that compensation. Respondent also determined that petitioner was liable for additions to tax under sections

---

[14]Respondent did not consider the income reported on petitioner's untimely filed 2006 return in determining the amount of his unreported Schedule C gross receipts set forth in the amended answer.

**[\*11]** 6651(a)(1) and (2) and 6654. Respondent determined the 2007 income tax deficiency using a single filing status for petitioner.

## VII. Petitioner's Tax Court Proceedings

After receiving the notices of deficiency petitioner[15] filed petitions contesting respondent's determinations with respect to petitioner's 2006 and 2007 taxable years. We consolidated the two cases for trial, briefing, and opinion. During the course of the trial petitioner did not call any subcontractors, laborers, or suppliers in an effort to reconstruct his expenses. Petitioner also did not introduce any expert testimony regarding the customary profit margin in the construction industry.

## VIII. Petitioner's Compliance History

Petitioner failed to file Federal income tax returns for 2002-05 and 2007-10. The record contains no indication that petitioner has ever filed Federal employment tax returns or made any estimated tax payments. Petitioner's history

---

[15]Petitioner and Mrs. Reynoso jointly filed a petition contesting respondent's determinations with respect to 2006. Respondent subsequently filed a motion to dismiss for lack of jurisdiction as to Mrs. Reynoso and to change caption on the grounds that no notice of deficiency or notice of determination had been issued to Mrs. Reynoso for 2006. We granted respondent's motion and dismissed the case for lack of jurisdiction as to Mrs. Reynoso.

[*12] shows an extended failure to comply with his tax reporting and payment obligations.

## OPINION

I.    Burden of Proof

A.    In General

Generally, the Commissioner's determinations in a notice of a deficiency are presumed correct, and the taxpayer bears the burden of proving that the determinations are erroneous.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  The burden of proof shifts to the Commissioner, however, if the taxpayer produces credible evidence to support the deduction or position, the taxpayer complied with the substantiation requirements, and the taxpayer cooperated with the Secretary[16] with regard to all reasonable requests for information.  Sec. 7491(a); see also Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001).  In addition, if the Commissioner raises a new issue or seeks an

---

[16]The term "Secretary" means "the Secretary of the Treasury or his delegate", sec. 7701(a)(11)(B), and the term "or his delegate" means "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context", sec. 7701(a)(12)(A)(i).

**[\*13]** increase in the deficiency, the Commissioner has the burden of proof as to the new issue or the increased deficiency. <u>See</u> Rule 142(a)(1).

Petitioner does not contend that section 7491(a)(1) applies, and the record establishes that he did not satisfy the section 7491(a)(2) requirements. Accordingly, petitioner bears the burden of proof with respect to all disputed factual issues, except with respect to the increased deficiency asserted in respondent's amended answer. <u>See</u> Rule 142(a)(1). Respondent concedes that, under Rule 142(a)(1), respondent bears the burden of proof with respect to the increased deficiency.

B.    <u>Burden of Production Under Section 6201(d)</u>

Under section 6201(d), if a taxpayer asserts a reasonable dispute with respect to any item of income reported on an information return filed by a third party and the taxpayer meets certain other requirements, the Commissioner bears the burden of producing reasonable and probative information, in addition to the information return, concerning the deficiency attributable to the income item. The burden shifts to the Commissioner only if the taxpayer fully cooperates with the Commissioner by providing, within a reasonable period of time, access to and inspection of all witnesses, information, and documents within the control of the taxpayer as reasonably requested. <u>See</u> <u>id.</u>

**[*14]** Respondent received two information returns with respect to petitioner's income for 2007:[17] a Form 1099-MISC from PAMA showing compensation of $961,000 and a Form 1099-MISC from Peter Ortiz RCI showing compensation of $94,000.[18] Petitioner does not dispute that he received income from PAMA in 2007. However, he does dispute the accuracy of the amount of income PAMA reported on the Form 1099-MISC.

Petitioner has offered only vague contentions that the amount of income reported on the Form 1099-MISC submitted by PAMA is erroneous. Furthermore, in his brief, petitioner conceded that he "generally agrees" with the $961,000 amount PAMA reported on the Form 1099-MISC. Petitioner's vague assertions are insufficient to shift the burden of production to respondent under section 6201(d).[19] See Sanders v. Commissioner, T.C. Memo. 2010-279.

---

[17]The record also contains a copy of a Form 1099-MISC purportedly issued by PAMA showing payment of $146,400 of nonemployee compensation to Los Brothers Co. in 2006. The record contains no evidence that PAMA actually filed the Form 1099-MISC.

[18]Petitioner does not dispute the accuracy of the 2006 Form 1099-S respondent received with respect to the Berkshire property.

[19]Even if we were to assume that petitioner's dispute is reasonable, respondent has introduced probative evidence that petitioner had unreported taxable income as shown on the information returns.

[*15] Petitioner also disputes that he received any income from Peter Ortiz RCI in 2007. Petitioner admitted, however, that he worked for Mr. Ortiz during 2007. He further testified that he deposited checks made payable to Mr. Ortiz into his own bank account.[20] Petitioner's attempt to dispute the accuracy of the information return under these circumstances is not reasonable. Accordingly, we find that the burden of production with respect to petitioner's 2007 income from Peter Ortiz RCI did not shift to respondent under section 6201(d).

## II. Unreported Income

Section 61(a) defines gross income as "all income from whatever source derived" and includes compensation paid for services, whether furnished by the taxpayer as an employee, a self-employed person, or an independent contractor. A taxpayer must maintain books and records establishing the amount of his or her gross income. Sec. 6001. If a taxpayer fails to maintain the required books and records, the Commissioner may determine the taxpayer's income by any method that clearly reflects income. See sec. 446(b); Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989). The Commissioner's reconstruction of income "need only be

---

[20]In addition, respondent introduced evidence that petitioner failed to cooperate. Petitioner testified that he previously told respondent's counsel that he never had worked for Mr. Ortiz. He admitted during his testimony that he began working with Mr. Ortiz in 2005 and that he worked with Mr. Ortiz through 2007.

[*16] reasonable in light of all surrounding facts and circumstances." Petzoldt v. Commissioner, 92 T.C. at 687.

The Commissioner has great latitude in reconstructing a taxpayer's income. See sec. 446(b); Petzoldt v. Commissioner, 92 T.C. at 687, 693. The Commissioner may reconstruct a taxpayer's income using third-party information returns. See Parker v. Commissioner, 117 F.3d 785 (5th Cir. 1997); Ketler v. Commissioner, T.C. Memo. 1999-68. The Commissioner also may use bank records and other third-party records to reconstruct a taxpayer's income. See Parkinson v. Commissioner, 647 F.2d 875, 876 (9th Cir. 1981), aff'g T.C. Memo. 1979-319; see also Williams v. Commissioner, 999 F.2d 760, 764 (4th Cir. 1993), aff'g T.C. Memo. 1992-153.

As noted above, the Commissioner's deficiency determination normally is entitled to a presumption of correctness. See Rule 142(a); see also United States v. Stonehill, 702 F.2d 1288, 1293 (9th Cir. 1983). However, when a case that involves unreported income is appealable to the U.S. Court of Appeals for the Ninth Circuit, as this case appears to be absent a stipulation to the contrary, see sec. 7482(b)(1)(A), (2), the Commissioner's determination of unreported income is entitled to a presumption of correctness only if the Commissioner first establishes "some evidentiary foundation" connecting the taxpayer with the income-producing

**[\*17]** activity, see <u>Weimerskirch v. Commissioner</u>, 596 F.2d 358, 361-362 (9th Cir. 1979), <u>rev'g</u> 67 T.C. 672 (1977), or demonstrating that the taxpayer actually received unreported income, see <u>Edwards v. Commissioner</u>, 680 F.2d 1268, 1270-1271 (9th Cir. 1982).  If the Commissioner introduces some evidence that the taxpayer received unreported income, the burden of production shifts to the taxpayer, who must establish by a preponderance of the evidence that the deficiency was arbitrary or erroneous.  See <u>Hardy v. Commissioner</u>, 181 F.3d 1002, 1004 (9th Cir. 1999), <u>aff'g</u> T.C. Memo. 1997-97.

The parties stipulated that during the years at issue petitioner operated two sole proprietorship construction businesses and provided construction services for PAMA through those businesses.  Petitioner testified that he did not keep any sort of ledger or journal with respect to the income of his construction businesses.  He stipulated that he received PAMA checks during 2006 and 2007, but he testified that he did not record his receipt of checks from PAMA.  The parties also stipulated that petitioner maintained bank accounts into which he deposited receipts during the years at issue.  Accordingly, we find that respondent acted reasonably in reconstructing petitioner's income.  We address each year in turn.

**[*18]** A.     2006

Respondent introduced copies of PAMA's vendor histories showing that in 2006 PAMA made payments to R&R Construction and Los Brothers Co. of $21,000 and $186,400, respectively. Respondent also introduced copies of canceled checks that PAMA wrote to R&R Construction and Los Brothers Co. during 2006. Petitioner's endorsement appears on a number of the canceled checks.

Petitioner testified that he worked on all of the properties listed on PAMA's 2006 vendor histories for R&R Construction and Los Brothers Co. He further testified that he deposited checks from PAMA into one of his bank accounts.

We find that respondent has connected petitioner with the income-producing activity. Consequently, petitioner bears the burden of proving that respondent's determinations were erroneous, see Weimerskirch v. Commissioner, 596 F.2d at 361, except with respect to the additional unreported income of $207,400 for 2006, see Rule 142(a)(1).

Respondent relies on PAMA's vendor histories, canceled checks, and petitioner's own admissions, all of which show that petitioner, operating through his sole proprietorship construction businesses, performed services for and received income from PAMA during 2006. Petitioner has raised no issues with

**[\*19]** respect to respondent's determination and, in his brief, has conceded that he "generally agrees" with respondent's determination of unreported income for 2006. Accordingly, we sustain respondent's determination with respect to petitioner's unreported income for 2006.

    B.    <u>2007</u>

For 2007 respondent introduced a wage and income transcript showing that petitioner received compensation from PAMA and Peter Ortiz RCI of $961,000 and $94,000, respectively, and that respondent received Forms 1099-MISC from PAMA and Peter Ortiz RCI with respect that income. Respondent also introduced a copy of PAMA's vendor history for R&R Construction showing payments of $961,000 to R&R Construction during 2007. Respondent introduced deposit slips for account Nos. 4098 and 4099 showing that petitioner deposited checks from PAMA made payable to R&R Construction and to Mr. Ortiz. Respondent also introduced copies of canceled checks from PAMA that petitioner had endorsed. Petitioner admitted at trial that he worked for PAMA and Mr. Ortiz during 2007.

We find that respondent has introduced sufficient evidence to connect petitioner with the income-producing activities. Consequently, petitioner bears the burden of proving that respondent's determinations were arbitrary or erroneous. See <u>Weimerskirch v. Commissioner</u>, 596 F.2d at 361.

**[*20]** Petitioner raises two arguments with respect to respondent's reconstruction of income. First, while petitioner has conceded that he "generally agrees" that he received $961,000 from PAMA in 2007, he continues to question the accuracy of PAMA's records. Second, he disputes that he received payments from Peter Ortiz RCI during 2007.

Petitioner examined copies of the canceled checks from PAMA at trial and testified that he did not cash certain checks. With respect to some of the checks, petitioner testified that he did not work at the jobsite identified on the face of the check. With respect to at least two of the disputed checks, however, petitioner later testified that he did work at that jobsite. In addition, when respondent questioned petitioner about one of the checks during cross-examination, he admitted that he may have cashed the check and that he was not sure whether the signature on the check was his own.

In response to petitioner's testimony that he did not cash certain checks, respondent introduced copies of deposit slips for petitioner's bank accounts showing that he deposited a number of the disputed checks into his bank accounts. While the endorsements on some of the other disputed checks are illegible, a number of the checks bear the endorsement "R&R Construction". With respect to check No. 1316, petitioner testified that he did not cash the check and that Mr.

**[*21]** Ortiz endorsed the check; however, the check bears markings including petitioner's birthdate and identification card number and a stamp indicating that it was cashed at Mira Loma Market, a place where petitioner regularly cashed checks.

Petitioner offered no evidence to explain why other individuals would have cashed or deposited checks made payable to his sole proprietorship businesses. At one point petitioner testified that he was unsure as to whether anyone else had signatory authority on his bank accounts. However, he also testified that he was the only individual with signatory authority on his bank accounts.

Petitioner's testimony was inconsistent during trial and conflicts with other credible evidence in the record. In the absence of corroborating evidence, we find his testimony regarding the disputed checks to be self-serving and unreliable. See Tokarski v. Commissioner, 87 T.C. 74, 76-77 (1986). Petitioner has failed to introduce any credible evidence that PAMA incorrectly reported compensation it paid to petitioner on its vendor history and on the Form 1099-MISC.

With respect to the income from Peter Ortiz RCI, respondent introduced copies of deposit slips for petitioner's account Nos. 4098 and 4099. The deposit slips show that during 2007 petitioner deposited checks made payable to Peter Ortiz R&R Construction, and Peter Ortiz RCI Construction, totaling $15,800, into

[*22] account No. 4098. Respondent also introduced copies of canceled checks made payable to Peter Ortiz R&R Construction that petitioner cashed.

Petitioner testified that he worked on some projects for Mr. Ortiz in 2007 and that he may have received payment from Mr. Ortiz. He further testified that if Mr. Ortiz could not work on a particular PAMA project, he would complete the project under Mr. Ortiz's name. He testified that Mr. Ortiz may have performed work for PAMA under petitioner's name. Petitioner testified that he deposited checks made payable to Mr. Ortiz into his bank accounts. He further testified that the payments he received may have derived from his sale of trucks to Mr. Ortiz in 2007.

Petitioner neither called Mr. Ortiz as a witness at trial nor introduced any documents relating to his alleged sale of trucks to Mr. Ortiz. Moreover, petitioner admitted that he worked for Mr. Ortiz during 2007. Petitioner has failed to introduce any credible evidence that he did not work for Peter Ortiz RCI or that Peter Ortiz RCI incorrectly reported compensation paid to petitioner during 2007. See, e.g., Parker v. Commissioner, 117 F.3d 785 (holding that the Commissioner did not act arbitrarily in relying upon third-party payor reports to determine a taxpayer's income where the taxpayer failed to file a return or other sworn document disputing the income reflected in such reports). Accordingly, we sustain

[*23] respondent's determinations with respect to petitioner's unreported income for 2007.

III.    Business Expenses

Generally, a taxpayer is entitled to deduct ordinary and necessary expenses paid or incurred in carrying on a trade or business. Sec. 162(a); Am. Stores Co. v. Commissioner, 114 T.C. 458, 468 (2000). An expense is ordinary if it is customary or usual within the particular trade, business, or industry or if it relates to a transaction "of common or frequent occurrence in the type of business involved." Deputy v. du Pont, 308 U.S. 488, 495 (1940). An expense is necessary if it is appropriate and helpful for the development of the business. See Commissioner v. Heininger, 320 U.S. 467, 471 (1943). Personal, living, or family expenses generally are not deductible. See sec. 262(a).

Deductions are a matter of legislative grace, and ordinarily a taxpayer must prove that he is entitled to the deductions he claims. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). A taxpayer must maintain records to substantiate claimed deductions and to establish the taxpayer's correct tax liability. Higbee v. Commissioner, 116 T.C. at 440; see also sec. 6001. The taxpayer must produce such records upon the Secretary's request. Sec. 7602(a); see also sec. 1.6001-1(e), Income Tax Regs. Adequate substantiation must establish the nature,

[*24] amount, and purpose of a claimed deduction. Higbee v. Commissioner, 116 T.C. at 440; see also Hradesky v. Commissioner, 65 T.C. 87 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976). In deciding whether a taxpayer adequately substantiated a claimed deduction, we are not required to accept the taxpayer's "self-serving, unverified, and undocumented testimony." Shea v. Commissioner, 112 T.C. 183, 189 (1999).

When a taxpayer establishes that he paid or incurred a deductible expense but does not establish the amount of the expense, we may estimate the amount of the deductible expense. Cohan v. Commissioner, 39 F.2d 540, 542-544 (2d Cir. 1930); see also Friscia Constr., Inc. v. Commissioner, T.C. Memo. 2000-192 (estimating that a construction company had a profit margin of approximately 12% on the basis of the taxpayer's testimony, canceled checks, and banking records); Booher v. Commissioner, T.C. Memo. 1986-475 (estimating that a drywall contractor incurred expenses equal to approximately 27% of his income for the year at issue on the basis of the taxpayer's testimony and the Commissioner's concessions for prior years). However, we cannot estimate the amount unless the taxpayer introduces evidence that he paid or incurred the expense and the evidence is sufficient for us to develop a reasonable estimate. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). In estimating the amount, we bear heavily

**[\*25]** upon the taxpayer who failed to maintain and produce the required records.

See Cohan v. Commissioner, 39 F.2d at 544.

Petitioner admits that he failed to maintain and produce adequate records to substantiate his claimed business expenses.[21] Petitioner contends, however, that this Court should estimate his business expenses pursuant to Cohan v. Commissioner, 39 F.2d 540. On brief he asks this Court to find that he incurred business expenses equal to approximately 60% of his income from PAMA for each year at issue.[22] He calculated this figure by analyzing PAMA's vendor histories and dividing PAMA's payments to him into four categories: subcontractor payments, worker and permit payments, inspection payments, and

_____

[21]Petitioner appears to argue that this Court should estimate his business expenses because his accountant, William Turner, lost petitioner's business records. We reject this argument because petitioner has not convinced us that his accountant had any of petitioner's business records. In addition, when a taxpayer's records have been destroyed or lost due to circumstances beyond his control, for example, fire, flood, earthquake, or other casualty, the taxpayer may substantiate the claimed deductions by a reasonable reconstruction of his expenditures. See Christensen v. Commissioner, T.C. Memo. 2006-62. Petitioner did not do so.

[22]Petitioner does not contend that he is entitled to deduct any business expenses with respect to the income he received from Peter Ortiz RCI. Furthermore, he has introduced no evidence and offered no testimony regarding whether he incurred business expenses while working for Peter Ortiz RCI. Accordingly, we consider only whether petitioner incurred business expenses in performing services for PAMA during the years at issue.

**[\*26]** other payments (including all payments for smaller jobs that did not require a subcontractor).  He estimated that he earned a 30% profit from subcontractor payments,[23] a 10% profit from worker and permit payments,[24] a 100% profit from inspection payments, and a 50% profit from other payments.[25]  Respondent contends that petitioner is not entitled to deduct any business expenses because he has neither substantiated the claimed expenses nor introduced evidence upon which this Court may base a reasonable estimate.

The record contains copies of receipts and invoices from 2006-07, as well as check registry excerpts and carbon copies of checks for 2007.  The majority of the

---

[23]Petitioner testified that he typically earned a 15% profit from jobs that required subcontractor work.  He has conceded that because he failed to maintain the required books and records, he is not entitled to use a 15% profit margin in calculating his expenses.  He doubled the 15% profit margin figure and used a 30% profit margin to calculate his expenses with respect to the subcontractor payments.

[24]Petitioner contends that a 10% profit margin is appropriate because he used almost the entirety of the worker and permit payments to pay for business expenses.

[25]Petitioner contends that this Court should use a 50% profit margin to calculate business expenses incurred with respect to the other payments because petitioner expected to earn a higher profit from smaller jobs that he completed himself.

**[*27]** receipts and invoices are not credible,[26] and the check registry excerpts and

_____

[26]A number of invoices show the purchaser as an individual other than petitioner. None of the delivery addresses on the invoices correspond with the addresses for the PAMA properties where petitioner worked during 2006. Some of the invoices clearly relate to work petitioner performed outside of his employment with PAMA. In particular, a number of invoices related to work performed at a property on Gerona Street. The record contains no evidence regarding the owner of the Gerona Street property and what type of work, if any, petitioner performed at the property.

Petitioner also introduced copies of permit applications filed in 2006; two of the permit applications do not bear an address for the relevant property, and one application shows the relevant address as the Gerona Street property. He also introduced receipts from the Home Depot and a lumber store. The receipts do not show that petitioner made the purchases or the property for which petitioner purportedly purchased the supplies.

Additionally, petitioner introduced invoices to substantiate depreciation deductions he claimed on his 2006 Form 4562. The record includes a schedule, ostensibly prepared by Mr. Turner, showing that petitioner claimed depreciation with respect to four vehicles: a 1985 Ford truck, a 2002 Chevrolet truck, a 1993 Peterbilt dumptruck, and a 2004 Ford Expedition. With respect to the 1985 Ford truck, the record shows that the vehicle actually was purchased by Anatalio Hidalgo, Jr. With respect to the 2002 Chevrolet truck, the record contains a copy of a purchase agreement showing that Gilberto Ruiz Olvera purchased the truck and that the primary use of the truck was personal, family, or household. With respect to the 2004 Ford Expedition, the record contains a copy of a purchase agreement showing that Esther Soto and petitioner purchased the vehicle and that the primary use of the truck was personal, family, or household.

Petitioner introduced the following documents purportedly to substantiate his claimed business expenses for 2007: (1) an invoice from Dunn-Edwards, Corp., (2) a signed statement from Wheeler Paving, Inc., and (3) nine invoices from J.R. Painting Cleaning Services. We find that the signed statement from Wheeler Paving, Inc., is not credible. The statement from Wheeler Paving, Inc., indicates

(continued...)

[*28] carbon copies are unreadable.

The record also contains copies of PAMA's vendor histories for 2006 and 2007. The vendor histories show that PAMA issued checks to petitioner as payment for labor, workers, materials, subcontractor expenses, permits, and inspections. With respect to the subcontractor expenses, PAMA's vendor histories indicate that PAMA issued checks to petitioner for particular subcontractor

---

[26](...continued)
that on July 3, 2007, petitioner paid Wheeler Paving, Inc., a $10,000 deposit for work on a PAMA property. However, petitioner's bank statements show that he neither wrote a check for $10,000 during July 2007 nor withdrew a sufficient amount of cash to pay the deposit.

We find that the invoices from Dunn-Edwards and J.R. Painting Cleaning Services are credible. The Dunn-Edwards invoice shows the purchaser as RCI Construction and the total amount due as $1,051.54. The record contains a copy of a canceled check drawn on petitioner's Bank of America account for $1,051.54 made payable to Dunn-Edwards. Furthermore, the invoice and check bear a notation showing that the job location was one of the PAMA properties where petitioner worked. The J.R. Painting Cleaning Services invoices, which total $3,860, each bear a notation showing that job location as one of the PAMA properties where petitioner worked. Furthermore, petitioner made a large cash withdrawal from account No. 4099 around the same time as the delivery date on the invoices. Accordingly, petitioner has substantiated business expenses of $5,382 for 2007. Because we find that petitioner is entitled to deduct as business expenses an amount equal to 30% of his total PAMA gross receipts, see infra p. 35, we will treat these expenses as included in the expense deduction we allow for 2007.

**[\*29]** services. For example, PAMA's vendor history for Los Brothers Co. for 2006 shows that PAMA issued checks for roofing, asphalt, painting, and carport work.[27]

Petitioner testified that he purchased materials to complete work for PAMA. Although this testimony may be credible, petitioner did not introduce any other credible evidence to substantiate the purported materials expenses. Furthermore, when questioned about a particular job, he could not recall what materials he purchased or how much he spent. He also testified that he may have used funds from checks designated as payments for materials for other purposes.

With respect to permit expenses he allegedly incurred, petitioner testified as follows:

- He received payment from PAMA for securing permits;

- he would pay for the permits and PAMA would refund him the money; and

- he used almost the full amounts of the checks designated as permit

---

[27]Daljit Kler, a PAMA employee, testified that when a PAMA property required construction work, a PAMA employee would request proposals from petitioner and other contractors. She further testified that petitioner was required to submit a proposed budget for each project itemizing the various costs. Petitioner did not introduce any copies of his proposals or budgets with respect to his work on PAMA properties.

**[*30]** payments for securing the permits.

Petitioner did not introduce any credible evidence to substantiate the purported permit expenses. Furthermore, he testified that he used at least some of the permit payment checks for other purposes.

With respect to subcontracting expenses he allegedly incurred, petitioner testified as follows:

- He hired subcontractors to work on PAMA properties when necessary;

- he hired subcontractors to perform asphalt, concrete, roofing, framing,[28] landscaping, stucco, extensive painting, and mold and mildew work;

- he paid the subcontractors in cash and with checks;

- after he paid the subcontractors, the subcontractors would sign a lien release; and

- when he hired subcontractors to work on a PAMA job, he typically had a 10% to 15% profit margin.[29]

---

[28]On its vendor histories PAMA identified framing work as "facials".

[29]Ms. Kler testified that subcontractors who worked for petitioner on PAMA properties would demand payment from her for their work because petitioner had

(continued...)

[*31] Petitioner did not introduce any credible evidence to substantiate the purported subcontracting expenses. He did not introduce copies of canceled checks showing payments to subcontractors or the lien releases the subcontractors purportedly signed. Furthermore, while petitioner testified as to the names of the subcontractors he hired for different PAMA projects, he was unable to recall the subcontractors he hired for particular PAMA projects, and he did not call any subcontractors to testify.

With respect to worker expenses that he allegedly incurred, petitioner testified as follows:

- He hired daily workers and that he paid them in cash and with checks;

- he typically paid daily workers $80 to $100 a day, but he paid some daily workers up to $150 per day;

- he did not keep any money from the checks that PAMA designated as payment for workers; and

- the daily workers signed documents indicating that they were paid in full.

---

[29](...continued)
not paid them. Ms. Kler further testified that in some instances, petitioner received full payment for projects that he failed to complete.

**[\*32]** Petitioner did not introduce any credible evidence to substantiate the purported worker expenses. He did not introduce any documents signed by the workers showing that petitioner actually paid the workers. Petitioner's bank statements do not show any large cash withdrawals that can be tied to a particular project or the regular occurrence of cash withdrawals in similar amounts. While petitioner testified as to the names of some of the individuals he hired as daily workers for PAMA jobs, he did not call any of the workers to testify. Furthermore, petitioner's testimony was inconsistent at best. For instance, he testified that he occasionally hired daily workers to assist with inspections, then later testified that the checks designated as payment for inspections constituted pure profit to him. He also testified that he used checks designated for worker payment to pay other expenses and that the checks that PAMA designated as payment for labor were payments to petitioner personally.

Petitioner also testified regarding his use of Ray Roy Moorefield's contractor's license as follows:

- Because he did not have a contractor's license, petitioner arranged to use Mr. Moorefield's contractor's license;

- Mr. Moorefield's contractor's license was under the name R&R Construction;

[*33] •       he agreed to pay Mr. Moorefield 10% of the contract price for projects that required use of the contractor's license; and

•       Mr. Moorefield would secure permits for him in some instances.

Petitioner did not introduce any credible evidence to substantiate the purported expenses for use of Mr. Moorefield's contractor's license. He did not call Mr. Moorefield to testify at trial. He did not introduce any documentation showing payment to Mr. Moorefield. Furthermore, he did not testify as to which projects required him to use Mr. Moorefield's contractor's license.

Petitioner admitted that he did not maintain records of his business expenses for the years at issue. Most of the records petitioner introduced to substantiate his reported expenses were either not credible or not sufficient to adequately substantiate any business expenses. His failure to call witnesses or introduce evidence within his control gives rise to the presumption that such evidence would be unfavorable. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), aff'd, 162 F.2d 513 (10th Cir. 1947). Furthermore, at trial he offered vague and inconsistent testimony, particularly in regard to the purposes of the designated payments, how PAMA identified the purpose of and calculated the amount of each designated payment, and how he used the designated payments.

**[*34]**  Accordingly, we find that petitioner has failed to substantiate most of his claimed business expenses for the years at issue.

Although petitioner urges us to adopt his proposed profit margin estimate, petitioner offered only his own self-serving, unverified testimony to support the estimate.  Petitioner's testimony alone is an inadequate basis for us to accept his proposed estimate of the amounts of his business expenses for the years at issue. See Smith v. Commissioner, T.C. Memo. 2000-290.  Furthermore, petitioner's testimony at trial was inconsistent with the profit margin estimate set forth in his brief.[30]  Finally, petitioner's proposed profit margin estimate depends on this Court finding that the PAMA worksheets properly designated the purpose and amount of each payment made to petitioner, a finding that, on the basis of the record, we are unable to make.  Accordingly, we decline to apply the profit margin estimate petitioner proposed in his brief.

While petitioner has failed to introduce credible evidence to substantiate the precise amounts of his business expenses or allow us to accept his proposed profit

---

[30]For example, petitioner proposed a 10% profit margin with respect to the worker payments; however, he testified that he used funds from checks designated as worker payments to pay other expenses and that he occasionally retained the funds from those checks.  Additionally, petitioner used a 10% profit margin with respect to payments designated as labor payments, but he testified that the labor payments constituted pure profit to him.

[*35] margin estimate, petitioner has introduced evidence that he incurred some business expenses. The record shows that petitioner made large cash withdrawals consistent with his testimony. He introduced a number of invoices purportedly related to his construction businesses, some of which provided credible evidence of his business expenses. See supra note 26. Furthermore, although we do not find petitioner's testimony credible in all respects, we find that petitioner credibly testified that he incurred some expenses in connection with the operation of his construction businesses. Given the nature of petitioner's line of work, it is clear to us that he incurred some business expenses.

On the basis of petitioner's testimony and the evidence in the record, we are convinced that petitioner was operating a construction business and necessarily had a variety of expenses in connection with the operation of that business, which would be allowed as deductions under section 162(a). We may allow petitioner a reasonable amount of estimated deductions under section 162(a) in connection with his construction businesses. See Friscia Constr., Inc. v. Commissioner, T.C. Memo. 2000-192. We find that petitioner is entitled to deduct business expenses in an amount equal to 30% of his total gross receipts from PAMA for each of the years in issue. This percentage is substantially lower than petitioner's proposed expense percentage because we have absolutely no basis for estimating a higher

**[*36]** percentage. As we have observed in prior opinions, in estimating the amount of a taxpayer's business expenses, we bear heavily upon the taxpayer who failed to maintain and produce the required records. See Cohan v. Commissioner, 39 F.2d at 544. Therefore, petitioner is entitled to deduct as business expenses an amount equal to 30% of his gross receipts from PAMA for each of 2006 and 2007.

IV.  Petitioner's Liability for Self-Employment Tax

A taxpayer's self-employment income is subject to self-employment tax. Sec. 1401(a) and (b). Self-employment tax is assessed and collected as part of the income tax, must be included in computing any income tax deficiency or overpayment for the applicable tax period, and must be taken into account for estimated tax purposes. Sec. 1401; see also sec. 1.1401-1(a), Income Tax Regs. Self-employment income generally is defined as "the net earnings from self-employment derived by an individual".[31] Sec. 1402(b). Section 1402(a) defines "net earnings from self-employment" as follows:

---

[31]With respect to the old-age, survivors, and disability tax imposed by sec. 1401(a), sec. 1402(b)(1) provides that a taxpayer's self-employment income shall not include "that part of the net earnings from self-employment which is in excess of (i) an amount equal to the contribution and benefit base (as determined under section 230 of the Social Security Act) which is effective for the calendar year in which such taxable year begins, minus (ii) the amount of wages paid to such individual during such taxable years".

[*37] The term "net earnings from self-employment" means the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business, plus his distributive share (whether or not distributed) of income or loss described in section 702(a)(8) from any trade or business carried on by a partnership of which he is a member * * *

See also sec. 1.1402(a)-1, Income Tax Regs. Income earned for services performed as an independent contractor is self-employment income. See sec. 1402(c)(2) and (3); Jackson v. Commissioner, 108 T.C. 130, 133-134 (1997).

During 2006 petitioner performed services for PAMA through his sole proprietorship construction businesses. He was an independent contractor and not an employee of PAMA. All of his unreported income for 2006 arose from his performance of services for PAMA. Accordingly, all of petitioner's unreported income for 2006, less the attributable deductions allowed, is self-employment income that is subject to self-employment tax.

During 2007 petitioner performed services for PAMA through his sole proprietorship construction businesses. He was an independent contractor and not an employee of PAMA. During 2007 petitioner also provided services to Peter Ortiz RCI. He received nonemployee compensation of $94,000 from Peter Ortiz RCI. Petitioner admitted that during 2007 he was self-employed. Accordingly, all

**[\*38]** of petitioner's unreported income for 2007, less the attributable deductions allowed, is self-employment income that is subject to self-employment tax.

## V.    Petitioner's 2006 Sale of the Berkshire Property

Gross income includes all income from whatever source derived, including gains derived from dealings in property.  See sec. 61(a)(3).  Gain from the sale or exchange of property must be recognized, unless the Code provides otherwise.  Sec. 1001(c).  Section 1001 defines gain from the sale of property as the excess of the amount realized on the sale of the property over the adjusted basis of the property sold or exchanged.  See also sec. 1.61-6, Income Tax Regs.

### A.    Amount Realized

The first step in determining gain on the sale of property involves calculating the amount realized.  The amount realized is the sum of any money received plus the fair market value of any other property received, reduced by the expenses of selling the property.  See sec. 1001(b); Chapin v. Commissioner, 12 T.C. 235, 238 (1949), aff'd, 180 F.2d 140 (8th Cir. 1950).  The amount realized includes "the amount of liabilities from which the transferor is discharged as a result of the sale or disposition."  Sec. 1.1001-2(a)(1), Income Tax Regs.  Selling expenses include advertising expenses, see sec. 1.1034-1(b)(4)(i), Income Tax Regs., commissions, see Black v. Commissioner, 60 T.C. 108, 110 (1973); sec.

**[*39]** 1.1034-1(b)(4)(i), Income Tax Regs., and deed and title preparation expenses, see Chapin v. Commissioner, 12 T.C. at 238; sec. 1.1034-1(b)(4)(i), Income Tax Regs.

Petitioner sold the Berkshire property on May 31, 2006, for $675,000. Respondent concedes that petitioner incurred the following selling expenses: (1) a buyer's credit of $16,225; (2) commissions of $16,875; (3) escrow charges of $1,396; (4) title charges of $3,580; and (5) a property disclosure settlement amount of $50. Accordingly, respondent contends that petitioner may reduce his amount realized by $38,126. Petitioner appears to contend that he incurred additional "seller fees" of $2,848.

The seller closing statement shows that part of the sale proceeds was used to satisfy various liabilities, including a liability identified as the "GMAC Mortgage". With respect to the "GMAC Mortgage", the seller closing statement identifies the following costs: payoff of the principal balance, accrued interest, prepayment, recon fee, interest, late charge, and other fees and costs. The seller closing statement identifies the $2,848 amount as "Other Fees and Costs - GMAC Mortgage". Petitioner has introduced no evidence regarding the meaning of "other fees and costs". He simply has identified the other fees and costs amount as "seller fees" in his brief without providing any explanation. Petitioner has failed

**[\*40]** to satisfy his burden of proving that he incurred additional selling expenses and therefore he is not entitled to reduce his amount realized by an additional $2,848.  Accordingly, we find that petitioner's amount realized from sale of the Berkshire property was $636,874.

    B.    <u>Adjusted Basis</u>

To calculate the gain realized from petitioner's sale of the Berkshire property, we must subtract his adjusted basis in the property from the amount he realized from its sale.  Section 1011 provides that a taxpayer's adjusted basis for determining the gain or loss from the sale or other disposition of property shall be its cost, adjusted to the extent provided in section 1016.  <u>See also</u> sec. 1012.  A property's cost is "the amount paid for such property in cash or other property." Sec. 1.1012-1(a), Income Tax Regs.  The term "cost" includes "any indebtedness to the seller for the purchase price of the property and any indebtedness to a third party secured by the property", as well as expenses a taxpayer incurs in acquiring the property.  <u>Metrocorp, Inc. v. Commissioner</u>, 116 T.C. 211, 242 (2001).  The taxpayer may increase his basis in the property even if he does not personally assume the indebtedness.  <u>See</u> <u>Crane v. Commissioner,</u> 331 U.S. 1, 11-12 (1947). If a taxpayer places a mortgage on property he already owns, the mortgage

**[*41]** generally does not affect the basis of the property. See <u>Woodsam Assocs.,</u>

<u>Inc. v. Commissioner</u>, 16 T.C. 649 (1951), <u>aff'd</u>, 198 F.2d 327 (2d Cir. 1952).

Under section 1016(a)(1), the basis of property must be adjusted for

expenditures, receipts, losses, or other items properly chargeable to capital account.

The cost of improvements and betterments made to a taxpayer's property are among

the items properly chargeable to capital account. <u>See</u> sec. 1.1016-2(a), Income Tax

Regs. The taxpayer has the burden of proving the basis of property for purposes of

determining the amount of gain the taxpayer must recognize. <u>See</u> <u>O'Neill v.</u>

<u>Commissioner</u>, 271 F.2d 44, 50 (9th Cir. 1959), <u>aff'g</u> T.C. Memo. 1957-193;

<u>Rodriguez v. Commissioner</u>, T.C. Memo. 2009-22.

Petitioner appears to argue that he had a basis[32] in the Berkshire property of

---

[32]In a letter to respondent regarding the notice of deficiency, Mr. Turner wrote that petitioner had a basis in the Berkshire property of $578,860. On the Form 4797 attached to his 2006 return, petitioner reported that he had a basis in the Berkshire property of $650,078. In his brief petitioner contends that he had a basis in the Berkshire property of $488,903.84. In calculating his basis of $488,903.84, petitioner included the following amounts: (1) the payoff amount of the GMAC mortgage principal balance ($447,949.45); (2)"seller fees" of $2,848.39; (3) escrow charges of $1,396; (4) title charges of $3,580; (5) commissions of $16,875; and (6) a buyer's credit of $16,255. As noted, the escrow charges, title charges, commissions, and buyer's credit are expenses that reduce petitioner's amount realized on the sale of the Berkshire property. <u>See</u> <u>supra</u> pp. 38-39.

Although petitioner argued that he had a basis of $650,078 on the Form 4797 attached to his 2006 return, petitioner abandoned this argument in his subsequent

(continued...)

**[*42]** $447,949.  In the notice of deficiency respondent determined that petitioner

had a basis of zero in the Berkshire property.  However, in respondent's opening

brief,  respondent appears to concede that petitioner had a basis of $447,949 in the

Berkshire property by requesting a finding of fact that petitioner had a basis of

$447,949.  Moreover, in respondent's reply brief, respondent abandons any

argument that petitioner had a basis of zero in the property.  Because respondent

effectively has conceded that petitioner had a basis of $447,949 in the Berkshire

property, we find that petitioner had a basis of $447,949 in the Berkshire property.

    C.    <u>Claimed Itemized Deductions</u>

In his opening brief petitioner argues for the first time that he is entitled to

itemized deductions for the real property taxes and interest charges related to the

sale of the Berkshire property.  Petitioner contends that he is entitled to deduct the

following:  (1) interest charges of $17,221, $14,850, $1,417, and $1,178;[33] (2)

---

[32](...continued)
filings with this Court.  Accordingly, we deem petitioner to have abandoned his
argument that he had a basis in the Berkshire property in excess of $488,903.84.
Because the escrow charges, title charges, commissions, and buyer's credit properly
are applied to reduce petitioner's amount realized, we find petitioner's argument to
be that he had a basis of $447,949 in the Berkshire property.

[33]The seller closing statement shows that the amounts petitioner claims as
interest are related to the GMAC mortgage as follows:  (1) $17,221 for accrued
interest to May 18, 2006; (2) $14,850 for prepayment; (3) $1,417 for interest from

(continued...)

**[\*43]** property taxes and penalties of $6,467; and (3) supplemental taxes and penalties of $343.[34]

Petitioner did not attach a Schedule A to his untimely filed 2006 return and he did not elect to itemize his deductions for that year. See sec. 63(e)(1). He did not introduce any evidence at trial other than the closing statement regarding the payment of real property taxes or of the interest. He did not introduce a Form 1098, Mortgage Interest Statement, for 2006. With respect to the property taxes, petitioner introduced no evidence to show which portions of the $6,467 and $343 amounts constituted taxes as opposed to penalties. See sec. 162(f); sec. 1.162-21, Income Tax Regs.

Most importantly, petitioner did not give respondent any notice in his petition, his pretrial memorandum, or at trial that he was claiming these itemized deductions. In the reply brief respondent contends that petitioner untimely raised this issue and the parties did not try the issue by consent. Given the lack of evidence in the record and petitioner's delay in raising the issue until his opening brief, we conclude that petitioner did not timely raise the issue, and we decline to

_____

[33](...continued)
May 19 through June 2, 2006; and (4) $1,178 for a late charge.

[34]With respect to the property taxes, petitioner acknowledges that he is not entitled to deduct the amount of property taxes paid for the period from May 31 through July 1, 2006.

[*44] decide it.  See DiLeo v. Commissioner, 96 T.C. 858, 891 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992); Foil v. Commissioner, 92 T.C. 376, 418 (1989), aff'd, 920 F.2d 1196 (5th Cir. 1990).

D.    Conclusion

We find that petitioner's amount realized from the sale of the Berkshire property was $636,874 and that he had an adjusted basis in the Berkshire property of $447,949.  Accordingly, petitioner must recognize a short-term capital gain of $188,925 with respect to his 2006 sale of the Berkshire property.

VI.    Petitioner's 2007 Filing Status

Section 6013(a) authorizes spouses to elect to file a joint Federal income tax return.  If they elect to do so, the tax required to be shown on the return is computed on their combined income, expenses, and credits, and their liability for the tax is joint and several.  See sec. 6013(d)(3).  To qualify for the tax rate applicable to joint filers, a taxpayer must file a joint return with his spouse pursuant to section 6013.  See sec. 1(a)(1); see also Brunner v. Commissioner, T.C. Memo. 2004-187, aff'd, 142 Fed. Appx. 53 (3d Cir. 2005).  "[W]here the taxpayer has filed no return as of the date the case is submitted for decision * * * no returns would be in the record, and, therefore, no joint filing status could be

[*45] claimed." Phillips v. Commissioner, 86 T.C. 433, 441 n.7 (1986), aff'd in part, rev'd in part on another issue, 851 F.2d 1492 (D.C. Cir. 1988).

For 2007 neither petitioner nor Mrs. Reynoso filed a Federal income tax return. Accordingly, we sustain respondent's determination to use a married filing separately status for petitioner for 2007.[35] See supra note 1.

## VII. Additions to Tax

If the taxpayer assigns error to the Commissioner's determination that a taxpayer is liable for an addition to tax, the Commissioner has the burden, under section 7491(c), of producing evidence with respect to the liability of the taxpayer for the addition to tax. See Higbee v. Commissioner, 116 T.C. at 446-447. To meet his burden of production, the Commissioner must come forward with sufficient evidence that it is appropriate to impose the addition to tax. Id. Once

---

[35]In his opening brief petitioner argues for the first time that if joint filing status is disallowed for 2007, petitioner must report only half of his income because California is a community property State. Petitioner did not give respondent any notice in his petition, his pretrial memorandum, or at trial that he was claiming that he was obligated to report only half of his income. Petitioner's failure to raise his community property argument before briefing prejudiced respondent. Respondent did not introduce evidence or elicit testimony to rebut the statutory presumption that the income was community property, see In re Jolly's Estate, 238 P. 353 (Cal. 1925), or to support potential arguments under secs. 66(b) or 879(a), see also Shea v. Commissioner, 112 T.C. 183 (1999). We conclude, therefore, that petitioner did not timely raise the issue, and we decline to decide it. See DiLeo v. Commissioner, 96 T.C. 858, 891 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992); Foil v. Commissioner, 92 T.C. 376, 418 (1989), aff'd, 920 F.2d 1196 (5th Cir. 1990).

**[*46]** the Commissioner meets his burden, the taxpayer must come forward with evidence sufficient to persuade this Court that the determination is incorrect.  Id. Respondent has the burden of proof with respect to the increased additions to tax for 2007 because respondent asserted them in the amended answer.  See Rule 142(a)(1).

Respondent determined that petitioner is liable for additions to tax for failure to timely file a return for each year in issue under section 6651(a)(1). Section 6651(a)(1) authorizes the imposition of an addition to tax for failure to timely file a return, unless it is shown that such failure is due to reasonable cause and not due to willful neglect.  See United States v. Boyle, 469 U.S. 241, 245 (1985); United States v. Nordbrock, 38 F.3d 440, 444 (9th Cir. 1994).  A failure to timely file a Federal income tax return is due to reasonable cause if the taxpayer exercised ordinary business care and prudence but nevertheless was unable to file the return within the prescribed time.  See sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  Willful neglect means a conscious, intentional failure to file or reckless indifference toward filing.  Boyle, 469 U.S. at 245.  The failure to timely file a return is not excused by the taxpayer's reliance on an agent to file the required return.  See id. at 252.

[*47] Petitioner stipulated that he did not timely file returns for the years at issue. In addition respondent introduced Forms 4340, Certificate of Assessments, Payments, and Other Specified Matters, for 2006 and 2007 which confirm that petitioner failed to timely file returns for the years at issue. Consequently, we conclude that respondent has satisfied his burden of production under section 7491(c), and petitioner must come forward with evidence sufficient to persuade the Court that respondent's determination is erroneous. Petitioner appears to argue that his failure to timely file his returns was due to reasonable cause because he relied on his accountant, Mr. Turner, to prepare and file returns for the years at issue. Even if we were to accept petitioner's testimony regarding his relationship with Mr. Turner as credible, which we do not, petitioner's reliance on Mr. Turner does not excuse petitioner from responsibility to timely file his returns.[36] Accordingly, we sustain respondent's determinations as to the section 6651(a)(1) additions to tax for 2006 and 2007.

Respondent also determined that petitioner is liable for additions to tax for failure to pay tax shown on a return under section 6651(a)(2). Section 6651(a)(2) imposes an addition to tax for failure to pay the amount of tax shown on a

_____

[36]We note that petitioner failed to file returns for 2002-05 and 2007-10. Petitioner's pattern of noncompliance weighs against a finding of reasonable cause. See Judge v. Commissioner, 88 T.C. 1175, 1189-1191 (1987).

**[*48]** taxpayer's Federal income tax return on or before the payment due date,

unless such failure is due to reasonable cause and not willful neglect.[37]  A failure to

pay will be considered due to reasonable cause if the taxpayer makes a satisfactory

showing that he exercised ordinary business care and prudence in providing for

payment of his tax liability and was nevertheless unable to pay the tax or would

suffer undue hardship if he paid on the due date.  See sec. 301.6651-1(c)(1), Proced.

& Admin. Regs.  The section 6651(a)(2) addition to tax applies only when an

amount of tax is shown on a return filed by the taxpayer or prepared by the

Secretary.  Sec. 6651(a)(2), (g)(2); Cabirac v. Commissioner, 120 T.C. 163, 170

(2003).  When a taxpayer has not filed a return, the section 6651(a)(2) addition to

tax may not be imposed unless the Secretary has prepared a substitute for return that

satisfies the requirements of section 6020(b).  See Wheeler v. Commissioner, 127

T.C. 200, 210 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008).

Respondent introduced into evidence substitutes for returns that satisfy the

requirements of section 6020(b), as well as the Forms 4340.  The substitutes for

returns and the Forms 4340 establish that petitioner failed to pay the tax shown

on the substitutes for returns.  Respondent has satisfied his burden of production

---

[37]The sec. 6651(a)(2) addition to tax is 0.5% of the amount of tax shown on the return, with an additional 0.5% per month during which the failure to pay continues, up to a maximum of 25%.

[*49] under section 7491(c).  Petitioner did not introduce any evidence that he was unable to pay the taxes owed or that he would have suffered undue hardship if he had paid the taxes on the due dates.  Accordingly, we sustain respondent's determinations as to the section 6651(a)(2) additions to tax.

Respondent also determined that petitioner is liable for additions to tax for failure to pay estimated tax under section 6654.  Section 6654 imposes an addition to tax on an individual who underpays his estimated tax.[38]  The addition to tax is calculated with reference to four required installment payments of the taxpayer's estimated tax liability.  Sec. 6654(c) and (d).  In general, each required installment of estimated tax is equal to 25% of the "required annual payment".  Sec. 6654(d).  A taxpayer has an obligation to pay estimated tax only if he has a "required annual payment".  Wheeler v. Commissioner, 127 T.C. at 212; see also Mendes v. Commissioner, 121 T.C. 308, 324 (2003).  The "required annual payment" is equal to the lesser of (1) 90% of the tax shown on the individual's return for that year (or, if no return is filed, 90% of his tax for such year), see sec. 6654(d)(1)(B)(i), or

---

[38]Unless a statutory exception applies, the sec. 6654(a) addition to tax is mandatory, see sec. 6654(a), (e); Recklitis v. Commissioner, 91 T.C. 874, 913 (1988), and sec. 6654 does not contain a general exception for reasonable cause or absence of willful neglect, see Grosshandler v. Commissioner, 75 T.C. 1, 21 (1980).  Petitioner does not contend that any of the statutory exceptions under sec. 6654(e) are applicable to this case.

**[\*50]** (2) if the individual filed a return for the immediately preceding taxable year, 100% of the tax shown on that return, see sec. 6654(d)(1)(B)(ii); see also sec. 6654(d)(1)(A), (B), and (C).  If, after the Commissioner issues a notice of deficiency for a taxable year, a taxpayer files a return for that year showing no tax due, the Court will disregard the return for purposes of determining whether the taxpayer satisfies "the return-filed safe harbor of section 6654(d)(1)(B)(i)."  Mendes v. Commissioner, 121 T.C. at 328.

Respondent introduced evidence to prove that petitioner was required to file Federal income tax returns for 2006-07, that petitioner failed to file returns for 2005 and 2007 and failed to timely file a return for 2006, and that petitioner did not make any estimated tax payments for 2006 and 2007.

Because petitioner did not file a return for 2005, petitioner's required annual payment for 2006 was equal to 90% of the tax shown on his return for that year at issue or, if no return was filed, 90% of his tax for the year.  See sec. 6654(d)(1)(B).  We disregard petitioner's untimely filed 2006 return because it was filed after respondent mailed the notice of deficiency for 2006.  Mendes v. Commissioner, 121 T.C. at 324-325.  Respondent has produced sufficient evidence to demonstrate that petitioner had a required annual payment for 2006 equal to 90% of his tax for the year, that petitioner did not make any estimated tax

[*51] payments for 2006, and that petitioner is liable for the section 6654 addition to tax for 2006. Petitioner does not contend that any statutory exception to the addition to tax applies. Accordingly, we sustain respondent's determination as to the section 6654 addition to tax for 2006.

We reach a different conclusion with respect to 2007, however. Petitioner failed to file a return for 2007, but he filed a return for 2006 before respondent mailed the notice of deficiency for 2007. On petitioner's 2006 return, he reported total tax of $3,813. After petitioner subtracted his credits against tax from his total tax figure, he calculated that he had zero tax due and requested a refund. See supra note 12; see also sec. 6654(f). For purposes of deciding petitioner's tax liability for 2006, we look to his tax liability after adjustments for credits against tax. See sec. 6654(f)(3). Accordingly, petitioner's 2006 return showed no tax liability,[39] and therefore petitioner did not have a required annual payment for

_____

[39]Furthermore, we note that a taxpayer's estimated tax liability is determined on the basis of the original tax return, and not on the basis of the notice of deficiency or our decision with respect to the taxpayer's ultimate liability. See Mendes v. Commissioner, 121 T.C. 308, 324 (2003). The taxpayer may rely on an untimely filed original return provided that the return was filed before the issuance of the notice of deficiency. See Ellis v. Commissioner, T.C. Memo. 2007-207, aff'd in part and rev'd in part, 346 Fed. Appx. 346 (10th Cir. 2009). While petitioner filed his 2006 return after respondent issued the notice of deficiency for 2006, petitioner filed the return before respondent mailed him the notice of deficiency for 2007.

**[\*52]** 2007. Accordingly, we do not sustain respondent's determination as to the section 6654(a) addition to tax for 2007.

We have considered all the other arguments made by the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

Decisions will be entered under

Rule 155.