**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 1, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROYCE A. ELLIS,

Petitioner - Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent - Appellee.

No. 08-9000
(U.S. Tax Court)
(No. CIR-1 : 19766-05)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.[**]

---

The tax court concluded Royce A. Ellis owed tax deficiencies of

$1,517,634, $3,692,300 and $1,688,195 for 1999, 2000 and 2001, respectively. It

also determined he owed additions to tax under 26 U.S.C. § 6651(a)(1) for 1999,

2000 and 2001 in the amounts of $379,687.37, $830,767.50 and $253,229.25,

respectively. The tax court further concluded Ellis owed additions to tax for 2000

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] On January 6, 2009, this Court ordered this matter be submitted for disposition on the briefs pursuant to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G).

in the amount of $923,075 under 26 U.S.C. § 6651(a)(2) and $197,223.79 under 26 U.S.C. § 6654. Our jurisdiction arises under 26 U.S.C. § 7482(a)(1). We affirm the tax deficiencies and additions to tax with the exception of the § 6654 addition to tax for 2000 which we reverse and remand to the tax court for recalculation.

## I. BACKGROUND

During the tax years in question (1999 through 2001), Ellis d/b/a Coastal Builders provided framing, drywall, plaster finishing and painting services to JPI Apartment Management (JPI). In 2001, JPI conducted an audit of its vendors and contractors including Ellis. The audit revealed Ellis had reported his son's social security number on his W-9. JPI offered Ellis an opportunity to submit a revised W-9; Ellis never responded. Consequently, in early 2002, JPI filed with the Internal Revenue Service (IRS) corrected Forms 1099-MISC for 1999 and 2000 and a Form 1099-MISC for 2001, all with Ellis' correct social security number. It reported it had paid Ellis $3,130,417.25 in 1999, $8,240,832.26 in 2000 and $2,573,625.82 in 2001.

In June 2002, a "Power of Attorney and Declaration of Representative" (Form 2848) was filed with the IRS naming John W. Townshend, a Certified Public Accountant, as Ellis' attorney in fact and representative for tax year 2000.[1]

---

[1] In the tax court, Ellis provided a completed Form 2848 for 1999, 2000 and 2001. The 1999 form appears to be an original and is dated September 2002; the 2000 and 2001 forms appear to be copies and are dated October 2001. Only the 2000 form is shown to

Under 26 C.F.R. § 601.506(a), if a taxpayer files a Form 2848 designating a representative, the government must provide that individual a copy of all notices or other written communication required to be given the taxpayer, unless restricted by the taxpayer.

On October 21, 2002, Ellis filed his 2001 tax return, which was prepared by Townshend. He reported zero tax liability. In late 2002, IRS Agent Dennis Bok began examining Ellis' 2001 tax return. As part of his investigation, Bok allegedly attempted to reach Townshend via telephone on at least twelve occasions. Each time, Bok left a message asking Townshend to contact him. Townshend never responded. Consequently, on January 3, 2003, Bok successfully sought permission from his superiors to bypass Townshend and contact Ellis directly (Bypass Order). *See* 26 C.F.R. § 601.506(b) (allowing agent to request permission from his supervisor to bypass representative and contact taxpayer directly when representative "has unreasonably delayed or hindered an examination . . . by failing to furnish, after repeated request, non-privileged information necessary to the examination"). Townshend and (allegedly) Ellis never received written notice of the Bypass Order as required by 26 C.F.R. § 601.506(b)(1).

Several weeks later, Agent Bok sent a letter to Ellis informing him his 2001

_____

have been filed with the IRS. Also, as pointed out by the Tax court, the 2000 and 2001 forms appear to be misdated because Townshend was not retained until early 2002.

tax return would be audited on February 20 and requesting various documents be brought to the audit. Ellis told Townshend, who sought and received an extension of time until March 24, 2003. Because Ellis did not keep contemporaneous books and records, Townshend used bank statements, receipts and Forms 1099 to create a general ledger. In the end, the general ledger consisted of a list of all of the transactions on Ellis' business account at Bank of America from January 1, 2001, to December 31, 2001; it then divided up those transactions into various categories including materials and supplies, building supplies, and travel and entertainment.

On March 24, Townshend met with Bok, providing him the general ledger and documentation naming him Ellis' attorney in fact and representative. Townshend also provided Bok with receipts, copies of bank statements and copies of eighteen Forms-1099-MISC for 2001 which purportedly showed payments Ellis made to various individuals while doing business as Coastal Builders. Bok and Townshend also discussed tax years 1999 and 2000 but Townshend did not provide any documentation for those years.

On or about June 23, 2003, the IRS's Service Center in Ogden, Utah, sent Ellis a letter requesting information clarifying the discrepancies between income amounts Ellis reported on his 2001 tax return and the amounts reported to the IRS by JPI on four Forms-1099-MISC. Townshend responded to the letter on Ellis' behalf, stating two of the forms were corrections of each other and providing a

-4-

list of the Bank of America account transactions which led to the amount of gross receipts reported on Ellis' 2001 tax return. Several months later, the Ogden Service Center sent Ellis a "Closing Notice," thanking him for the information and stating it was able to resolve the discrepancies. (R. Trial Ex. 26-P.) On September 15, 2004, Ellis filed his tax return for 1999, reporting a tax liability of $11,155. The IRS did not receive a 2000 tax return from Ellis.[2]

In the meantime, Agent Byron Daniels, who replaced Agent Bok, continued investigating Ellis by reviewing his 1999 and 2001 tax returns and preparing a substitute return for 2000. Using the bank deposits analysis method, which involved examining the deposits made to Ellis' business accounts, Daniels determined Ellis had underreported his gross receipts by $49,411 in 1999, $9,409,881.79 in 2000, and $120,063 in 2001. In the tax court proceedings, the IRS learned it had improperly included as income for 2000 and 2001 certain transfers between Ellis' various bank accounts. Therefore, the IRS conceded Ellis had properly reported his gross receipts for 2001 and reduced Ellis' gross receipts for 2000 by $400,000.

Daniels rejected Ellis' claimed costs of goods sold and business expenses for 1999 and 2001 because they were unsubstantiated. In doing so, he disregarded the Forms 1099-MISC Townshend provided Bok at the March 23,

---

[2] Townshend testified he prepared a 2000 tax return for Ellis and a copy of that return was admitted during the trial in the tax court. However, the copy is not signed and Agent Byron Daniels testified the IRS never received a 2000 return for Ellis.

2003 meeting because they had not been filed and contained numerous discrepancies or did not relate to Ellis' construction business. He also did not rely on any of the receipts Bok received from Townsend because Bok had previously rejected them for being unorganized, faded and lacking a description of their business purpose. Nevertheless, despite the lack of substantiation, Daniels recognized Ellis would have incurred some business expenses for each of the years in question. Therefore, using the 2001 ledger, Daniels calculated allowable business expenses for 2001. In doing so, he disallowed those expenses listed in the general ledger which did not appear to be business-related.[3] He then used the ratio of allowable expenses to business income for 2001 to compute reasonable business expenses for 1999 and 2000.

Based on these determinations, Daniels calculated tax deficiencies for 1999, 2000 and 2001. Because Ellis had failed to timely file his 1999, 2000 and 2001 returns, Daniels also computed an addition to tax for each year pursuant to 26 U.S.C. § 6651(a)(1). The § 6651(a)(1) addition to tax for 2001 was later reduced based on the IRS's concession it had failed to consider that Ellis had obtained an extension of time to file his 2001 tax return. Daniels also calculated

---

[3] For example, the 2001 ledger reported expenses totaling $36,688 for materials and supplies. Daniels disallowed $30,216 of those expenses because they were incurred at "possibly personal item vendors," such as Becker Appliance Store, Bed Bath & Beyond and the Old Stone Church (a restaurant in Colorado Springs, Colorado), and there were no receipts demonstrating what items were purchased at these vendors. (R. Trial Ex. 20-R at 2.)

two additions to the tax for 2000 based on Ellis' failure to timely pay tax, *see* 26 U.S.C. § 6651(a)(2), and to pay estimated taxes, *see* 26 U.S.C. § 6654. On July 29, 2005, the IRS issued a Notice of Deficiency to Ellis outlining the tax deficiencies and additions to tax for 1999, 2000 and 2001. Prior to issuing the Notice of Deficiency, the IRS did not issue a 30-day letter to either Ellis or Townshend outlining Agent Daniels' findings as required by 26 C.F.R. § 601.105(d)(1).

Ellis filed a petition in the tax court challenging the tax deficiencies as well as the additions to tax. After a bench trial, the tax court upheld the deficiencies and additions to tax with the exception of the § 6654 addition to tax for failing to pay estimated taxes for 2000. While the IRS had established Ellis should be penalized for failing to pay estimated taxes during 2000, the penalty should have been computed based on the tax liability reported on Ellis' 1999 tax return ($11,155) as opposed to the tax liability for 1999 as determined by the IRS ($3,323,070).

## II. DISCUSSION

Ellis complains (1) his due process rights were violated as a result of the IRS's failure to follow its procedural rules and (2) the tax court erred in concluding he had not supported the costs of goods sold and expenditures claimed on his 2001 tax return. The IRS says the 2000 addition to tax under 26 U.S.C. § 6654 needs to be recalculated to comply with the tax court's decision. "We . . .

review the tax court's decision in the same manner and to the same extent as decisions of the district courts tried without a jury. Therefore, we review legal questions *de novo* and factual questions for clear error." *Estate of True v. Comm'r*, 390 F.3d 1210, 1217 (10th Cir. 2004) (citation and quotations omitted).

A. <u>Due Process</u>

Ellis argues the IRS's failure to provide him or Townshend notice of the Bypass Order and to issue a 30-day letter prior to sending him the Notice of Deficiency violated his due process rights or, in the alternative, should have shifted the burden of proof to the IRS. He claims these "multiple instances of disregarding procedural notification rules . . . [a]ffect[ed] the determination of [his] deficiency," specifically, they "allowed . . . [A]gent Daniels to make omissions and errors in his audit examination that increased [Ellis'] tax liability" and "resulted in a badly flawed unilateral examination of [his] 2001 taxes." (Appellant's Br. at 11, 14.) We disagree.

The rules violated in this case, 26 C.F.R. §§ 601.105(d)(1) (failing to issue a 30-day letter) and 601.506(b)(1) (failing to provide written notice of the Bypass Order), are contained in Part 601 of the Treasury Regulations, which is entitled "Statement of Procedural Rules." These rules were issued by the IRS Commissioner pursuant to his power to promulgate rules relating to the "government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." 5 U.S.C. § 301; *see also Rosenberg v. Comm'r*, 450 F.2d

529, 531 (10th Cir. 1971); *Boulez v. Comm'r*, 810 F.2d 209, 215 (D.C. Cir. 1987).

The Fourth Circuit has aptly described these rules as follows:

> [T]hey are rules to govern the conduct of the agents of the Internal Revenue Service in the performance of their duty to determine the correctness of the income tax returns of the taxpayers. They are carefully devised to avoid litigation in disputed cases by affording an opportunity to the taxpayer to agree with examining agents in adjustments of the tax shown on the return and by authorizing the representatives of the Commissioner to enter into compromises and settlements when complete agreement cannot be had . . . . Obviously, this pretrial procedure is of great value both to the taxpayer and to the Government in composing disputed questions of fact and law and avoiding the delay and expense of litigation; and it is so much to the interest of the parties that it is customarily employed. We think, however, that the rules are directory and not mandatory in legal effect, and they do not curtail the power conferred upon the Secretary of the Treasury . . . to send a notice of deficiency if he determines that there is a deficiency in the tax shown on the taxpayer's return.

*Luhring v. Glotzbach*, 304 F.2d 560, 564-65 (4th Cir. 1962); *see also Boulez*, 810

F.2d at 215 ("[The rules] serve merely as guidelines for conducting the internal

affairs of the agency.").

We agreed with the Fourth Circuit's characterization of the rules in

*Rosenberg*. 450 F.2d at 533. That case is instructive. There, the IRS did not

provide an administrative hearing to Rosenberg prior to issuing her a Notice of

Deficiency in violation of 26 C.F.R. § 601.106(b). Rosenberg argued the IRS's

violation of its own procedural rules resulted in an arbitrary determination of

deficiency which shifted the burden of proof to the IRS or voided the Notice of

Deficiency. We framed the issue as whether the IRS's violation of the pertinent

administrative procedures violated due process. *Id.* at 532. Balancing the

government's interests against those of the taxpayer, we concluded "[d]ue process does not require a hearing at the initial stage or at any particular point of an administrative proceeding." *Id.* at 533. The procedures at issue were "not designed to protect the constitutional rights of the taxpayer but rather provide methods by which the Audit Division's determination can be checked without the expense and delay of litigation." *Id.* Furthermore, there was no showing "as to what, if anything, would have been gained by [the administrative hearing]. The facts are stipulated. [Rosenberg] had a full hearing and determination de novo in the Tax Court." *Id.*

Like Rosenberg, Ellis received a Notice of Deficiency providing him notice of the tax deficiencies and additions to tax for each of the pertinent years. He also had a trial before the tax court at which he presented evidence. The tax court reviewed the tax deficiencies and additions to tax de novo. *See Clapp v. Comm'r*, 875 F.2d 1396, 1403 (9th Cir. 1989); *Raheja v. Comm'r*, 725 F.2d 64, 66 (7th Cir. 1984). Therefore, Ellis clearly was provided all the process he was due. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case.") (quotations omitted).

Moreover, like Rosenberg, Ellis has failed to show he was prejudiced by the failure to receive notice of the Bypass Order or a 30-day letter. At trial,

-10-

Townshend testified that had he received the 30-day letter with Daniels' findings, he could have protested Daniels' inclusion of certain bank-to-bank transfers as gross receipts. However, the IRS conceded the error in the tax court and the tax court's final decision accounted for that error. Townsend also testified he could have explained the transactions contained in the general ledger. However, Daniels' calculations, which included an explanation as to why he did not allow certain unsubstantiated expenses, were attached to the Notice of Deficiency. Therefore, Ellis could have sought to substantiate his expenses in the tax court. He did not.

Ellis attempts to distinguish *Rosenberg* because Rosenberg was only denied one hearing (whereas he was denied notice of the Bypass Order and a 30-day letter) and the denial of that hearing did not affect the deficiency determination. Because Ellis, like Rosenberg, received notice and an opportunity to be heard, no due process violation occurred. This is true even though this case involved two violations. And there is no indication the rule violations in this case affected Agent Daniels' deficiency determinations.[4]

B. 2001 Costs of Goods Sold and Expenses

---

[4] Ellis also argues the March 23, 2003 meeting between Townshend and Bok waived the Bypass Order. He provides no support for his argument. In the alternative he claims the meeting violated his privacy rights. He is mistaken. Townshend, as the preparer of Ellis' 2001 tax return, could represent Ellis in an examination of his 2001 taxes. *See* 31 C.F.R. § 10.7(c)(1)(viii). Moreover, Townshend provided Bok with documentation naming Townshend as Ellis' attorney in fact and representative at the beginning of the meeting.

Ellis asserts the tax court erroneously rejected his 2001 costs of goods sold and expenses because the 2001 general ledger was not contemporaneous. He claims the Internal Revenue Code does not require a taxpayer to keep contemporaneous business records. Ellis also argues Agent Daniels' "disallowance of 98.62% of [his] computed business deductions defies logic and economic reality" and was improper given the general ledger which "obviously show[ed] business related activities." (Appellant's Br. at 16.)

"A statutory notice of deficiency is presumed correct, and the [taxpayer] has the burden of establishing that the [IRS's] determination of income and deductions [is] incorrect." *Zell v. Comm'r*, 763 F.2d 1139, 1141 (10th Cir. 1985).[5] Ellis did not satisfy his burden in this case.

Ellis failed to substantiate the costs of goods sold and expenditures claimed on his 2001 tax return. He did not testify at trial. His only witness was Townshend, who lacked the requisite personal knowledge. The only evidence Ellis provided to substantiate his claimed costs of goods sold and expenditures was the general ledger and the Forms 1099-MISC which Townshend provided

---

[5] The only exception to the general rule concerning the burden of proof is when the taxpayer shows the IRS's deficiency determination is arbitrary and excessive; if the taxpayer meets that burden, the IRS must prove the precise deficiency. *Doyal v. Comm'r*, 616 F.2d 1191, 1192 (10th Cir. 1980). While Ellis has claimed the IRS's procedural rule violations should have shifted the burden of proof from him to the IRS, he has not claimed the burden of proof shifted because the IRS's deficiency determinations were arbitrary and excessive. He would be hard pressed to do so given Daniels' conservative calculation of Ellis' gross receipts (he did not analyze all of Ellis' bank accounts) and his allowance of some business expenses even though none were substantiated.

Agent Bok. The Forms 1099-MISC were properly rejected by the tax court because they were unfiled and seriously flawed. The 2001 general ledger was also not helpful because it is unsubstantiated. It simply lists every transaction which occurred on one of Ellis' business bank accounts between January 1, 2001 and December 31, 2001. Each transaction is described by date, amount and payee. Notably absent is any documentation specifically describing the underlying transaction. While Townshend provided Agent Bok with receipts allegedly supporting the general ledger, Ellis never sought their admission into evidence. In any event, it appears the receipts were unreadable, unorganized and lacked any detail describing their business purpose. Contrary to Ellis' claim, it was this lack of substantiation, not its non-contemporaneous nature, which led to the general ledger's rejection by the tax court.

Because Ellis' claimed costs of goods sold and expenditures were unsubstantiated, the tax court could have disallowed them altogether. *See Maciel v. Comm'r*, 489 F.3d 1018, 1028 (9th Cir. 2007); *see also* 26 U.S.C. §§ 274(d), 6001; 26 C.F.R. §§ 1.6001-1(a), 1.274-5—5T. Nevertheless, it (generously) adopted Agent Daniels' allowance of those expenses which appeared to be business-related based on the limited information provided. We see no error.

C. <u>§ 6654 Addition to Tax for 2000</u>

Agent Daniels imposed an addition to tax under 26 U.S.C. § 6654 based on Ellis' failure to pay estimated taxes for 2000. The tax court concluded Ellis

should be penalized under § 6654 but concluded the penalty should have been computed based on the tax liability of $11,155 reported on Ellis' 1999 tax return as opposed to the tax liability for 1999 as determined by the IRS. In its brief to this Court, the IRS acknowledges the tax court's judgment affirms the § 6654 addition to tax for 2000 as improperly calculated by Agent Daniels so it needs to be recalculated to comply with the tax court's decision. Consequently, we reverse and remand for recalculation of the § 6654 addition to tax.

We **AFFIRM** the tax deficiencies and additions to tax under 26 U.S.C. § 6651(a)(1) and (a)(2) but **REVERSE** the addition to tax under 26 U.S.C. § 6654 for 2000 and **REMAND** to the tax court to recalculate it to comply with its decision.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge