T.C. Memo. 2014-4

UNITED STATES TAX COURT

MATT L. SEIFFERT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9379-10.                           Filed January 9, 2014.

<u>George W. Connelly, Jr.</u>, for petitioner.

<u>Sara W. Dalton</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined deficiencies in petitioner's

Federal income tax for 1996 through 2001 (years at issue).  We must decide

whether petitioner was entitled to deductions under section 166[1] for purported bad

_____

[1]All section references are to the Internal Revenue Code for the years at

(continued...)

[*2] debts associated with a purported consulting activity that offset wage income. We hold that petitioner was not. We must also decide whether petitioner failed to report certain income for 1996, 1997 and 1998. We hold that he did not report that income. We must also decide whether petitioner is liable for the fraud penalty under section 6663. We hold that petitioner is liable.

FINDINGS OF FACT

The parties have stipulated some facts. We incorporate the stipulation of facts and accompanying exhibits by this reference. Petitioner resided in Texas when he filed the petition.

I. Petitioner's Employment and Dealings

A. Petitioner's Background

Petitioner is an experienced and savvy businessman. Petitioner earned a business administration degree from the University of Houston in 1975. In the 1980s petitioner organized various business entities engaged in residential real estate projects. Petitioner then worked as a salaried employee for the better part of the next decade.

---

[1](...continued)
issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

**[\*3]**   B. <u>Seaboard Controls</u>

Petitioner served as bookkeeper for Seaboard Controls (Seaboard) from 1992 to March 1994 and prepared its Federal income tax returns.

Seaboard was involved in a project for the Venezuelan Government (Venezuelan project). To that end, Seaboard tasked petitioner with obtaining financing on Seaboard's behalf. Petitioner was unsuccessful, and Seaboard ultimately lost money on the Venezuelan project.

Seaboard never had a profit-sharing agreement with petitioner relating to the Venezuelan project. Petitioner never requested Seaboard to satisfy any purported debt.

C. <u>Bank Fraud Incarceration</u>

Petitioner was incarcerated from April 1994 to December 1995 for a Federal bank fraud conviction. Petitioner was not employed, nor did he earn income during his incarceration.

D. <u>Houston Drywall</u>

Houston Drywall, Inc. (Houston Drywall), d.b.a. Classic Contractors of Houston, Inc. (Classic Contractors), hired petitioner as a salesman after his incarceration. Houston Drywall paid petitioner wages during each year at issue.

**[*4]** Petitioner also prepared Federal tax returns for Classic Contractors for 1998 through 2001.

Classic Contractors paid petitioner an additional $28,817[2] in 1996, $37,173 in 1997 and $9,400 in 1998. Classic Contractors filed Forms 1099-MISC, Miscellaneous Income, for those years (1099 income).

E. Kingwood Project

Petitioner proposed a residential real estate project in Kingwood, Texas (Kingwood project). Classic Contractors agreed to purchase a tract of land for the Kingwood project if petitioner developed, marketed and sold the residential lots. Classic Contractors agreed to split with petitioner the net profit.

Classic Contractors obtained financing to purchase an undeveloped tract of land. Petitioner then developed and subdivided the real property into approximately 250 residential lots. Petitioner sold about 50 lots but was unable to sell the remainder. Classic Contractors eventually defaulted on the note, and the lender took title of the remaining lots. The Kingwood project thus was unprofitable.

Petitioner was not owed any money related to the Kingwood project. Nor did petitioner ever attempt to collect any purported debt from Classic Contractors.

---

[2]Monetary amounts are rounded to the nearest dollar.

[*5] II.  Federal Income Tax Returns for the Years at Issue

Petitioner prepared and filed Forms 1040, U.S. Individual Income Tax Return, for the years at issue.  Petitioner used the accrual basis of accounting for the years at issue despite being an individual.

Petitioner reported wage income from Classic Contractors of $55,000 for 1996, $164,719 for 1997, $260,000 for 1998, $260,730 for 1999, $260,000 for 2000 and $255,230 for 2001.  Petitioner claimed he was exempt from withholding on Form W-4, Employee's Withholding Allowance Certificate, he submitted to his employer at the beginning of each year at issue.

Petitioner also reported a consulting business on Schedule C, Profit or Loss From Business, for the years at issue.  Petitioner reported $5,491 of Schedule C income for 1997 but no Schedule C income for the other years at issue.  Nor did petitioner report the 1099 income.  Petitioner claimed bad debt deductions of $41,302 for 1996, $137,500 for 1997, $215,100 for 1998, $209,000 for 1999, $183,727 for 2000 and $205,000 for 2001.  Petitioner determined the uncollectible amounts resulting from the Venezuelan and Kingwood projects at the end of each year at issue.

Respondent requested information regarding the 1099 income.  Petitioner claimed that he had reported the 1099 income as income for 1995 and 1996.  He

**[\*6]** asserted that the 1099 income Classic Contractors reported in 1997 was a payment on accounts receivable. Petitioner asserted that Classic Contractors made or would make additional payments. Respondent later requested additional information regarding the 1099 income. Petitioner again claimed that he had reported that income for 1995 and 1996 and the payment was posted against an outstanding balance on an account receivable.

Petitioner also provided respondent fabricated documents that purportedly corroborated the debts. One such document was a letter purportedly issued by Classic Contractors during petitioner's incarceration and before his employment with Classic Contractors.

Respondent's criminal investigation unit (CIU) reviewed the returns petitioner filed. Petitioner provided documents during a voluntary interview. Each document showed purported net operating losses (NOLs) petitioner carried forward and the purported bad debt that petitioner wrote off each year. CIU recommended that the United States criminally prosecute petitioner.

III. Petitioner's Conviction for Filing a False Tax Return

The United States indicted petitioner for filing fraudulent returns and providing materially false documentation for 1998, 1999 and 2000. Petitioner agreed to plead guilty to filing a false Federal income return for 2000.

**[\*7]** Petitioner entered into a plea agreement acknowledging that he had never reported income from Classic Contractors and that he was not entitled to any bad debt deduction. The parties agreed that petitioner had an "unused, available, and partially offsetting [$102,108] net operating loss deduction" for 2000 (2000 NOL) resulting in a $19,603 tax liability. Petitioner agreed, however, that the stated tax liability was only for criminal prosecution purposes and did not resolve his civil tax liabilities. The plea agreement "expressly exclude[d] and reserve[d] for subsequent civil proceedings the determination of any tax, interest or penalties due."

IV. Deficiency Notice

Respondent issued petitioner the deficiency notice disallowing the bad debt deductions and determining that petitioner failed to report self-employment income for 1996, 1997[3] and 1998. Respondent also determining that the civil fraud penalties applied against petitioner for the years at issue.

Respondent attached to the deficiency notice a statement of income tax changes and a six-page explanation of examination changes with five exhibits

[3]Respondent determined that petitioner did not report self-employment income of $31,682 for 1997. This amount represents the $37,173 Classic Contractors reported on the Form 1099-MISC as paid to petitioner less $5,491 in Schedule C income petitioner reported for 1997.

**[\*8]** (explanation).  Respondent detailed in the explanation the reason for each adjustment.

Petitioner filed the petition contesting all determinations in the deficiency notice.

OPINION

We are presented with an individual taxpayer that used the accrual method of accounting to offset wage income with purported bad debts.  We must decide whether respondent correctly disallowed the bad debt deductions and determined petitioner did not report income.  We also address a series of procedural challenges petitioner raises.  We then consider whether respondent demonstrated by clear and convincing evidence that petitioner acted with intent to evade tax such that he is liable for the fraud penalty.

I.  Burden of Proof Generally

We begin with the burden of proof.  The Commissioner's determinations in a deficiency notice are presumed correct, and the taxpayer bears the burden of proving otherwise.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Deductions are generally a matter of legislative grace, and the taxpayer bears the burden of proving he or she is entitled to claimed deductions.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292

[*9] U.S. 435, 440 (1934). Petitioner likewise carries the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976). A taxpayer must substantiate amounts claimed as deductions by maintaining the records necessary to establish that he or she is entitled to the deductions. Sec. 6001; Hradesky v. Commissioner, 65 T.C. at 90. The Court need not accept a taxpayer's self-serving testimony when the taxpayer fails to present corroborative evidence. Beam v. Commissioner, T.C. Memo. 1990-304 (citing Tokarski v. Commissioner, 87 T.C. 74, 77 (1986)), aff'd without published opinion, 956 F.2d 1166 (9th Cir. 1992).

The burden may shift to the Commissioner if the taxpayer proves that he or she has satisfied certain conditions. Sec. 7491(a); Snyder v. Commissioner, T.C. Memo. 2001-255. Petitioner has not complied with the substantiation requirements of section 7491(a). See Higbee v. Commissioner, 116 T.C. 438 (2001). Nor has petitioner cooperated in this matter such that the burden of production would shift to respondent to produce information. See sec. 6201(d). The burden therefore does not shift to respondent under section 7491(a).

II. Bad Debt Deductions

We turn now to the bad debt deductions petitioner claimed. Respondent contends that petitioner failed to show a bona fide debt existed that became

[*10] worthless during each year for which petitioner claimed the deduction. Petitioner contends the 2000 NOL establishes that he had available net operating losses from earlier years.

A.  Bad Debt

We first consider whether the bad debt deductions petitioner claimed satisfy section 166.  Petitioner contends that he correctly deducted debts Classic Contractors and Seaboard purportedly owed to him.  Respondent asserts that petitioner has not demonstrated that he met the requirements for any deduction under section 166.  We agree.

A taxpayer may deduct any bona fide business debt that becomes worthless within a taxable year.  Sec. 166(a)(1).  An accrual method taxpayer may deduct receivables as bad debts to the extent that the taxpayer included those amounts in income for that year or a prior year.  Sec. 1.166-1(c), Income Tax Regs.  Likewise, a worthless debt arising from unpaid wages, fees or similar item of taxable income is not deductible as a bad debt unless the taxpayer has included the amount in income for the year for which the bad debt is deducted or for a prior tax year. Schnell v. Commissioner, T.C. Memo. 2006-147.

Petitioner's contention that he included income, as an individual, for prior years under the accrual method is absurd.  Petitioner never included in income the

**[\*11]** purported profits from the Venezuelan project or the Kingwood project. See id. Nor did petitioner show a debt existed.[4] A bona fide debt arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. Kean v. Commissioner, 91 T.C. 575, 594 (1988); sec. 1.166-1(c), Income Tax Regs. There is no support that Seaboard or Classic Contractors was indebted to petitioner or a debtor-creditor relationship existed. Seaboard and Classic Contractors, not petitioner, each realized a loss from the unsuccessful ventures.

Petitioner also failed to demonstrate the purported debts became worthless during the years at issue. A taxpayer must prove that the debt had value at the beginning of the year in which it allegedly became worthless and that it became worthless during that year. Estate of Mann v. United States, 731 F.2d 267, 275 (5th Cir. 1984); Am. Offshore, Inc. v. Commissioner, 97 T.C. 579, 593-594 (1991). Petitioner testified that he determined the amount of debt that became

---

[4]Petitioner provided carbon copies of checks that he claims demonstrate the existence of bad debts but failed to submit any corresponding receipts or bank statements. The checks do not substantiate the existence of bad debts. See Miller v. Commissioner, T.C. Memo. 1996-402 (carbon copies of checks without corroborating bank statements did not meet substantiation requirements); Burrell v. Commissioner, T.C. Memo. 1994-574 (carbon copies of uncanceled checks and self-made receipts did not meet substantiation requirements).

[*12] worthless each year. Petitioner provided no credible documentation, however, corroborating his assertion. Nor did petitioner ever attempt to collect any of the purported debt. We therefore find that petitioner failed to establish there was any debt for section 166 purposes.

B. Collateral Estoppel

We now consider whether the 2000 NOL described in the plea agreement precludes respondent from challenging certain bad debt deductions. Petitioner asserts that the 2000 NOL establishes the purported debt and precludes respondent from challenging the bad debt deductions for 1996 through 1999. Respondent counters that he is not precluded because the 2000 NOL[5] was not an essential fact actually litigated in the prior proceeding. We agree with respondent.

Collateral estoppel may preclude a party from litigating previously decided issues of fact or law necessary to a court's prior judgment. Commissioner v. Sunnen, 333 U.S. 591, 598 (1948); Meier v. Commissioner, 91 T.C. 273, 286 (1988). Collateral estoppel applies only when the parties actually litigated the

_____

[5]We note that petitioner never demonstrated an available NOL. Rather, petitioner asserted at trial that the plea agreement established the 2000 NOL and precluded respondent from denying petitioner an NOL available for earlier years. The burden nonetheless rested with petitioner to demonstrate that he was entitled to NOL deductions. Petitioner acknowledged at trial that he was not attempting to reconstruct the NOL. Nor does the record establish petitioner was entitled to claim any NOL deductions.

[*13] issue and resolving that issue was essential to the prior decision.[6] Peck v.

Commissioner, 90 T.C. 162, 166-167 (1988), aff'd, 904 F.2d 525 (9th Cir. 1990).

A fact stated in a plea agreement is not established unless that fact was a necessary

element for conviction.  Uscinski v. Commissioner, T.C. Memo. 2006-200.

The plea agreement does not preclude respondent from challenging the bad

debt deductions.  Petitioner pleaded guilty to filing a false individual tax return for

2000.  This establishes an underpayment for that year.  See sec. 7206(1); Laciny v.

Commissioner, T.C. Memo. 2013-107.  The 2000 NOL was not a necessary

element, however, of that crime.  The material fact that constituted the false

statement was the bad debt deduction petitioner claimed.  The 2000 NOL was

relevant to the tax loss for criminal sentencing purposes.  And petitioner agreed

that the plea agreement did not resolve his civil tax liability.  Collateral estoppel

does not preclude respondent's determination.

III.  1099 Income

We next consider whether respondent correctly determined that petitioner

failed to report the 1099 income.  Petitioner asserts that the Forms 1099-MISC

alone are insufficient for respondent to determine petitioner had unreported

---

[6]Certain conditions must also be met for collateral estoppel to apply.  See generally Peck v. Commissioner, 90 T.C. 162, 166-167 (1988), aff'd, 904 F.2d 525 (9th Cir. 1990).  We need not address the other elements.

[*14] income.  See Portillo v. Commissioner, 932 F.2d 1128, 1134 (5th Cir. 1991), aff'g in part, rev'g in part T.C. Memo. 1990-68.  Respondent counters that the determination is factually supported because petitioner acknowledged that he received the 1099 income.  See Petzoldt v. Commissioner, 92 T.C. 661, 687-688 (1989); Fankhanel v. Commissioner, T.C. Memo. 1998-403, aff'd without published opinion, 205 F.3d 1333 (4th Cir. 2000).  We agree with respondent.

Petitioner disputes the income's characterization, not his receipt of it. The record demonstrates that petitioner acknowledged during examination receiving the 1099 income.  He claimed that he reported the 1099 income for an earlier year as repayment of indebtedness from Classic Contractors.  We have already rejected petitioner's assertion that Classic Contractors was indebted to him and that he previously reported the income.  Petitioner's admission that he received the income supports respondent's determination with respect to the 1099 income. Petitioner has not demonstrated the determination is incorrect.  See Petzoldt v. Commissioner, 92 T.C. at 689; see also Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), aff'g T.C. Memo. 1997-97.  We therefore sustain respondent's determination that petitioner had unreported income.

**[*15]** IV.  Procedural Challenges to Respondent's Determinations

Petitioner throws a variety of procedural challenges at the deficiency determination.  We address each argument in turn.

A.  Adequacy of Deficiency Notice

Petitioner first suggests, without any particularity, that the deficiency notice fails to describe the basis for the adjustments.  See sec. 7522.  We disagree.  The deficiency notice identifies the amounts, the tax years and the reasons for the adjustments.  See Health Inv. Corp. v. Commissioner, T.C. Memo. 2010-211.  And respondent explained the reason for each adjustment[7] in the explanation.  We hold that the deficiency notice comports with the requirements of section 7522.

B.  Multiple Examinations

We next consider petitioner's assertion that respondent improperly examined returns for certain years multiple times.  Petitioner contends respondent was obligated to issue second examination notices before doing so.  See sec. 7605(b).  Respondent denies conducting multiple examinations.  We agree with respondent.

_____

[7]Petitioner also argues that respondent did not adequately explain why he allowed petitioner a short-term capital loss of $3,000 for each year at issue. Petitioner claims that respondent was required to "describe the source" of the losses.  Petitioner, however,  does not challenge this adjustment.

**[\*16]**  The Commissioner may review matching information on a tax return with other records or information in his possession.  Id.; see Ellis v. Commissioner, T.C. Memo. 2007-207, aff'd in part, rev'd in part, 346 Fed. Appx. 346 (10th Cir. 2009); Rev. Proc. 2005-32, sec. 4.03(1)(b), 2005-1 C.B. 1206, 1207.  A taxpayer's voluntary provision of information to the Commissioner regarding a return is not considered an examination.  See Rev. Proc. 2005-32, sec. 4.03(1)(c).  The record demonstrates that petitioner provided information during a voluntary interview with CIU.  See Ballantine v. Commissioner, 74 T.C. 516, 524 (1980);  Rose v. Commissioner, 70 T.C. 558, 560 (1978).  We therefore find that respondent was not obligated to issue a notice of second examination.

## V.  Fraudulent Intent

We now consider whether respondent demonstrated by clear and convincing evidence that petitioner acted with fraudulent intent.  We do so to decide whether petitioner is liable for the civil fraud penalty under section 6663 and whether the limitations period under section 6501(c) bars respondent's determinations.  We address each in turn.

### A.  Fraud Penalty

We now consider whether petitioner is liable for the fraud penalty under section 6663.  The Commissioner must prove by clear and convincing evidence

[*17] that the taxpayer underpaid his or her income tax and that some part of the underpayment was due to fraud. Secs. 7454(a), 6663(a); Rule 142(b); Clayton v. Commissioner, 102 T.C. 632, 646 (1994). Fraud is a factual question to be decided on the entire record and cannot be presumed. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); Beaver v. Commissioner, 55 T.C. 85, 92 (1970). For each tax year, respondent must establish fraud through independent evidence. See Daoud v. Commissioner, T.C. Memo. 2010-282, aff'd, ___ Fed. Appx. ____, 2013 WL 6405826 (9th Cir. Dec. 9, 2013).

### 1. Badges of Fraud

The Commissioner must show that the taxpayer acted with specific intent to evade tax that the taxpayer knew or believed he or she owed by conduct intended to conceal, mislead or otherwise prevent the collection of tax. Sec. 7454; Recklitis v. Commissioner, 91 T.C. 874, 909 (1988); Stephenson v. Commissioner, 79 T.C. 995, 1005 (1982), aff'd, 748 F.2d 331 (6th Cir. 1984). Direct evidence of fraud is seldom available, and its existence may therefore be determined from the taxpayer's conduct and the surrounding circumstances. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971).

Courts rely on several indicia or badges of fraud. These badges of fraud include understatement of income, inadequate records, failure to file tax returns,

**[\*18]** concealment of assets, failure to cooperate with tax authorities, filing false documents, failure to make estimated tax payments, engaging in illegal activity, attempting to conceal illegal activity, dealing in cash, implausible or inconsistent explanations of behavior, an intent to mislead that may be inferred from a pattern of conduct, and lack of credibility of the taxpayer's testimony. Spies v. United States, 317 U.S. 492, 499 (1943); Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), aff'g T.C. Memo. 1984-601. Although no single factor is necessarily sufficient to establish fraud, a combination of several of these factors may be persuasive evidence of fraud. Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984), aff'g per curiam T.C. Memo. 1982-603.

### a. Understatement of Income

Petitioner consistently understated his income for each year at issue. The understatement of income can be shown by an overstatement of deductions. See Daoud v. Commissioner, T.C. Memo. 2010-282. Petitioner claimed bad debt deductions that he was unable to substantiate. The deduction amounts corresponded with his reported income to offset most or all of his liability for each year. Petitioner also failed to report 1099 income.

[*19]    b.  Inadequate and Incomplete Records

Petitioner's inadequate and incomplete records failed to substantiate any bad debt deductions for the years at issue.  There was no credible documentation confirming that petitioner held debt, that the debt ever became worthless or that the debt became worthless the year he claimed.

c.  Failure To Cooperate

Petitioner also did not cooperate with respondent.  Respondent repeatedly sought additional information regarding the years at issue.  Petitioner made false statements and produced misleading or fabricated documents purportedly substantiating the claimed deductions.

d.  Engaging in and Concealing Illegal Conduct

Petitioner engaged in illegal conduct as he pleaded guilty to filing a false Federal income tax return for 2000.  A conviction under section 7206(1) is highly persuasive evidence that a taxpayer intended to evade tax for that year.  See Morse v. Commissioner, 419 F.3d 829, 833 (8th Cir. 2005), aff'g T.C. Memo. 2003-332; Stefansson v. Commissioner, T.C. Memo. 1994-162; Avery v. Commissioner, T.C. Memo. 1993-344; Miller v. Commissioner, T.C. Memo. 1989-461.  Petitioner acknowledged in the plea agreement that there was no bona fide debt and that he was not entitled to the bad debt deduction.  This purported debt was the same that

[*20] he determined became worthless and claimed as deductions for the other years at issue.  Further, petitioner attempted to conceal his illegal activity from respondent by providing fabricated documents and misleading information.

### e. Inconsistent Explanations and Incredible Testimony

Petitioner provided inconsistent explanations that demonstrate an intent to mislead respondent.  Respondent examined bad debt deductions petitioner claimed for multiple years.  Petitioner repeatedly asserted that he was entitled to the deductions.  He claimed that he reported the 1099 income in an earlier year when he had in fact not reported the income.

Petitioner's testimony lacked credibility.  He continued to assert that Seaboard and Classic Contractors were indebted to him.  The record consistently contradicted his testimony.

### f. Tax Expertise

Petitioner's experience and understanding of tax law support a finding that he acted with fraudulent intent.  See Scallen v. Commissioner, 877 F.2d 1364, 1370-1371 (8th Cir. 1989), aff'g T.C. Memo. 1987-412.  A taxpayer's intelligence, education and sophistication are relevant in determining fraudulent intent.  Scott v. Commissioner, T.C. Memo. 2012-65; Wright v. Commissioner; T.C. Memo. 2000-336.  Petitioner was a sophisticated and savvy businessman.  He

[*21] had worked as a bookkeeper and accountant. Petitioner independently researched tax issues. We find that petitioner understood his conduct was contrary to existing tax law.

### g. Badges of Fraud Conclusion

In toto, many badges of fraud apply to petitioner. We conclude that respondent has proven by clear and convincing evidence that there was an underpayment for each year at issue and each underpayment was attributable to fraud.

### 2. Petitioner's Burden

Once the Commissioner has established by clear and convincing evidence that any portion of an underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except with respect to any portion of the underpayment that the taxpayer establishes (by a preponderance of the evidence) is not attributable to fraud. Sec. 6663(b); see Foxworthy, Inc. v. Commissioner, T.C. Memo. 2009-203, aff'd, 494 Fed. Appx. 964 (11th Cir. 2012).

Petitioner asserts that he misunderstood the requirements to claim the bad debt deductions because his tax professional advised him to use the accrual method of accounting. Respondent contends that petitioner failed to show that any portion was not attributable to fraud. We agree with respondent.

**[\*22]**  Petitioner contends he relied on a tax professional's advice.  Petitioner failed to corroborate, however, that he received the advice he claims he did.  The tax professional did not testify.  And petitioner did not offer any evidence corroborating his assertions.

Further, petitioner has not explained how advice purportedly given in the 1970s informed him on whether he could claim bad debt deductions arising in the 1990s.  There is no indication that a tax professional reviewed relevant documents and advised petitioner on the years at issue.  Rather, petitioner had a strong understanding of tax law and prepared returns for himself and his former employers.  His assertions are incredible, illogical and entirely unbelievable.  The record demonstrates that petitioner consistently misled respondent and intentionally confused issues to avoid his tax obligations.  Petitioner failed to demonstrate that any portion of the income was not attributable to fraud.

Accordingly, we find that petitioner is liable for the fraud penalty under section 6663 for each year at issue.[8]

---

[8]Respondent alternatively requested we impose an accuracy-related penalty under sec. 6662.  In light of our fraud finding, we need not consider the accuracy-related penalty.

**[\*23]** B. <u>Statute of Limitations</u>

Petitioner also argues that the limitations periods expired before respondent assessed petitioner's tax for the years at issue. Respondent contends that the limitations period does not apply for the years at issue because petitioner acted with the intent to evade tax. We agree with respondent.

The Commissioner must generally make such an assessment within a three-year period after a taxpayer files his or her return. Sec. 6501(a). In the case of a false and fraudulent return with the intent to evade tax, however, the tax may be assessed at any time. Sec. 6501(c)(1).

We have found that petitioner is liable for the fraud penalty under section 6663 for all years at issue. Respondent's burden of proof under section 6501(c)(1) is the same as that imposed under section 6663. <u>See</u> <u>Browning v. Commissioner</u>, T.C. Memo. 2011-261. We therefore hold that the limitations periods for assessing petitioner's tax are extended indefinitely. <u>See</u> sec. 6501(c)(1); <u>Paterson v. Commissioner</u>, T.C. Memo. 2007-109. Accordingly, respondent is not barred from assessing petitioner's deficiency for any year at issue. <u>See</u> sec. 6501(c)(1).

**[*24]** VI.  <u>Conclusion</u>

We sustain respondent's deficiency determinations for the years at issue, including the fraud penalty under section 6663.

In reaching these holdings, we have considered all arguments, and, to the extent not addressed here, we conclude that they are moot, irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.