T.C. Memo. 2014-61

UNITED STATES TAX COURT

MATT L. SEIFFERT, Petitioner
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 9379-10.                    Filed April 7, 2014.

<u>George W. Connelly, Jr.</u>, for petitioner.

<u>Sara W. Dalton</u>, for respondent.

SUPPLEMENTAL MEMORANDUM OPINION

KROUPA, <u>Judge</u>:  This matter is before the Court on petitioner's motion for

reconsideration of our findings and opinion and motion to vacate or revise our

_____

[*]This opinion supplements our prior opinion, <u>Seiffert v. Commissioner</u>, T.C. Memo. 2014-4.

[*2] decision in Seiffert v. Commissioner, T.C. Memo. 2014-4 (Seiffert I). See Rules 161 and 162.[1] We concluded in Seiffert I that respondent correctly disallowed bad debt deductions petitioner claimed for 1996 through 2001 (years at issue).

The motions focus on the legal and factual significance of an available net operating loss (NOL) for 2000 (2000 NOL) referenced in a plea agreement. Petitioner argued in Seiffert I that the plea agreement precluded respondent from challenging the 2000 NOL. We held that collateral estoppel did not establish the 2000 NOL as a fact because it was not an essential element of the criminal conviction to which the plea agreement related. Petitioner regurgitates this argument in the motions. He also, for the first time, argues that the plea agreement demonstrates that he was entitled to bad debt deductions and constitutes a factual admission. These new arguments are untimely and unsupported by fact or law. We will deny the motions.

## Background

We adopt the findings of fact we made in Seiffert I. We summarize the factual and procedural background briefly here to decide the motions.

_____

[1]Rule references are to the Tax Court Rules of Practice and Procedure, and section references are to the Internal Revenue Code in effect for the years at issue, unless otherwise indicated.

[*3] Petitioner worked as a salaried employee for two small businesses during the 1990s. Petitioner claimed that those businesses owed him hundreds of thousands of dollars related to two unprofitable ventures. Those companies never owed petitioner anything. Nor did petitioner ever try to collect those purported debts.

Petitioner prepared and filed Forms 1040, U.S. Individual Income Tax Return, for the years at issue. Petitioner claimed he was exempt from withholding and used the accrual basis of accounting for the years at issue. Petitioner reported wage income and income from a consulting business for the years at issue. Petitioner claimed bad debt deductions from the consulting business to offset much of his wage income for the years at issue. Those purported bad debts stemmed from the unprofitable ventures.

Respondent examined the returns for the years at issue. Petitioner made deceitful statements and provided fabricated documents during the examination. Respondent recommended petitioner be criminally prosecuted. The Government indicted petitioner for filing fraudulent returns and providing materially false documentation.

Petitioner entered into a plea agreement acknowledging that he was not entitled to a bad debt deduction. Petitioner pleaded guilty to filing a false Federal

**[*4]** income tax return for 2000 (one of the years at issue). The plea agreement's factual basis stated for purposes of criminal prosecution that petitioner had an "unused, available, and partially offsetting [$102,108] net operating loss deduction" for 2000 (the 2000 NOL). The plea agreement did not resolve petitioner's civil tax liabilities and "expressly exclude[d] and reserve[d] for subsequent civil proceedings the determination of any tax, interest or penalties due."

Respondent issued to petitioner a deficiency notice disallowing the bad debt deductions and determining that the civil fraud penalty applied against petitioner for the years at issue. Petitioner timely filed a petition. Petitioner alleged in the petition that he had advanced money to the businesses and the debts later proved uncollectible. Petitioner did not allege in the petition that collateral estoppel established the 2000 NOL.

Petitioner requested the trial be continued four times. Petitioner's counsel then moved to withdraw because petitioner stopped paying his legal fees. We denied that motion. The matter proceeded to trial.

**[*5]** At trial, respondent understood that petitioner would not reconstruct the 2000 NOL.[2] Petitioner's counsel indicated that petitioner was relying only on collateral estoppel to establish the 2000 NOL when he stated:

> [Petitioner is] not going back to reconstruct the entire NOL in this case * * * All we are saying is that [for] 2000 the Government has agreed it was [$]102,800, and to have it to be that much, starting in 2000, it had to be there in '99 and so forth back. It's a legal issue we'll obviously argue on brief, but that's where we're coming from.

The Court and respondent proceeded with that understanding. Petitioner argued on brief that only collateral estoppel established the 2000 NOL. Petitioner did not otherwise offer evidence or arguments documenting the 2000 NOL.

We found for respondent in Seiffert I. We held that collateral estoppel did not apply. We also found that petitioner failed to establish there was any debt for section 166 purposes. Petitioner filed the instant motions.

<u>Discussion</u>

We now turn to petitioner's shifting arguments related to the 2000 NOL. First, petitioner contends that collateral estoppel precludes respondent from

---

[2]Respondent's counsel stated: "Respondent doesn't want to be remiss and not come forward with his own proof, if Your Honor so desires. If Petitioner is relying on collateral estoppel of a plea agreement, then that's fine, but if we're going to prove up the NOL, then we have to go back and do that all right here and now, and I think it would be helpful for the parties to sit down and go through it before the Court gets involved."

**[\*6]** disputing the 2000 NOL. Second, petitioner contends that the 2000 NOL in the plea agreement is "strong evidence" of the bad debts that respondent failed to rebut. We begin with this Court's standards for motions under Rules 161 and 162. We then address petitioner's motions.

I. Standards Under Rules 161 and 162

We begin with the standard the Court uses to decide whether to grant a Rule 161 motion for reconsideration. The decision whether to grant a Rule 161 motion rests within the Court's discretion. CWT Farms, Inc. v. Commissioner, 79 T.C. 1054, 1057 (1982), aff'd, 755 F.2d 790 (11th Cir. 1985). It is the Court's policy to try all issues raised in a case in one proceeding to avoid piecemeal and protracted litigation. Id. Accordingly, we generally do not exercise our discretion to this end absent a showing of substantial error or unusual circumstances. Haft Trust v. Commissioner, 62 T.C. 145 (1974), aff'd on this ground, 510 F.2d 43, 45 n.1 (1st Cir. 1975).

We now focus on the standard this Court uses in deciding whether to grant a Rule 162 motion to vacate or revise a decision. Rule 162 does not provide us with a standard by which to evaluate a motion to vacate or revise a decision. See Brewer v. Commissioner, T.C. Memo. 2005-10. Accordingly, we will refer to the Federal Rules of Civil Procedure for guidance. Rule 1(b). We have often referred

**[*7]** to rule 60 of the Federal Rules of Civil Procedure and cases applying it to assist us in resolving issues raised in a motion to vacate or revise our decision. See, e.g., Cinema '84 v. Commissioner, 122 T.C. 264, 267-268 (2004), aff'd, 412 F.3d 366 (2d Cir. 2005). Motions to vacate or revise our decision are generally not granted absent a showing of unusual circumstance or substantial error, such as mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud or other reasons justifying relief. See Fed. R. Civ. P. 60(b); Mitchell v. Commissioner, T.C. Memo. 2013-204.

II. Petitioner's Motions

    A. Motion for Reconsideration

We focus now on the reconsideration motion. Petitioner contends that there is a "serious defect in the reasoning and analysis" of our opinion in Seiffert I. Petitioner contends that we improperly concluded that collateral estoppel did not apply. The 2000 NOL is crucial to petitioner's theory because it would support his position that respondent incorrectly disallowed petitioner's bad debt deductions for 2000 and before.

Petitioner is merely rehashing this argument. We heard and considered this argument once and find it inappropriate to reconsider Seiffert I simply because petitioner has raised it for a second time. See Estate of Quick v. Commissioner,

**[\*8]** 110 T.C. 440, 441-442 (1998); <u>Dynadeck Rotary Sys., Ltd. v. Commissioner</u>, T.C. Memo. 2001-113, <u>aff'd</u>, 40 Fed. Appx. 594 (9th Cir. 2002).

Petitioner also offers two new arguments. Petitioner has not identified any reason why he did not make these arguments at trial or on brief.

We nonetheless briefly address all three arguments so that petitioner understands that they are unsupported by fact or law.

### 1. Collateral Estoppel Does Not Apply.

Petitioner again argues that collateral estoppel precludes respondent from challenging the 2000 NOL. Petitioner is arguing, in essence, that every agreed-upon fact in a plea agreement is conclusively established and binding on the parties. We rejected that argument because a fact stated in a plea agreement is not established unless that fact was a necessary element for conviction. See <u>Uscinski v. Commissioner</u>, T.C. Memo. 2006-200. Petitioner did not demonstrate that the 2000 NOL was a necessary element of the conviction.[3]

Petitioner nonetheless contends that we have applied collateral estoppel in similar situations. A cursory reading of those opinions demonstrates petitioner is

---

[3]Petitioner unwittingly acknowledges in the reconsideration motion that collateral estoppel does not apply when he states: "While [r]espondent is not automatically foreclosed from asserting facts inconsistent with those in the underlying guilty plea, he should not be relieved of presenting facts." This statement indicates that petitioner misinterprets collateral estoppel principles.

**[\*9]** incorrect.  See Ephrem v. Commissioner, T.C. Memo. 2014-12 (holding that a taxpayer's statement in a prior criminal proceeding did not establish the precise amount of an understatement in the present civil proceeding under collateral estoppel or a theory closely resembling collateral estoppel); Atkinson v. Commissioner, T.C. Memo. 2012-226 (taxpayer collaterally estopped from challenging payment he received resulted from fraud because fraud finding was essential to criminal conviction).  Petitioner has not argued, nor do we conclude, that the 2000 NOL was an essential element of the conviction or actually litigated.  We again reject petitioner's argument that collateral estoppel establishes the 2000 NOL.

### 2.  Petitioner Failed To Demonstrate Any NOL or Bad Debt.

Petitioner contends for the first time that, even if collateral estoppel does not apply, the 2000 NOL in the plea agreement is compelling evidence that petitioner was entitled to bad debt deductions for 2000 and before.  Again, we disagree.  Facts in a plea agreement can be strong evidence as to the amount of tax owed.  See, e.g., Uscinski v. Commissioner, T.C. Memo. 2006-200; Livingston v.Commissioner, T.C. Memo. 2000-121.  Petitioner's counsel explicitly conceded, however, that petitioner was relying entirely on collateral estoppel to establish the 2000 NOL.  Respondent relied on that representation.  Notwithstanding, the record

**[\*10]** does not support a finding that petitioner had any NOL or experienced any losses.[4] We found in <u>Seiffert I</u> that petitioner fabricated purported bad debts. Further, petitioner agreed that the plea agreement did not determine tax owed or resolve civil tax liabilities. Put simply, the record contradicts petitioner's claim to the 2000 NOL and demonstrates that petitioner was not entitled to any bad debt deduction.

### 3. The Plea Agreement Is Not a Factual Admission.

Petitioner also contends for the first time that the plea agreement is a party-opponent admission that establishes the 2000 NOL as a matter of fact. <u>See</u> Fed. R. Evid. 801(d)(2). This hearsay exclusion is irrelevant because the plea agreement was admitted into evidence. Petitioner apparently conflates admissibility with a factual admission. This is a flat misunderstanding of the law. Petitioner has not identified an error or circumstance justifying reconsideration of <u>Seiffert I</u>.

---

[4]Petitioner also argues that the Court erred by ignoring the testimony of Alan Westheimer. Petitioner contends that Mr. Westheimer's "expert" testimony established the 2000 NOL. We disagree. Petitioner did not qualify Mr. Westheimer as an expert. <u>See</u> Rule 143(g). Regardless, his testimony was of little value because his conclusions were founded on petitioner's unreliable and fabricated information.

**[*11]**  B.  <u>Rule 162 Motion To Vacate or Revise</u>

We now focus on the motion to vacate or revise our decision in <u>Seiffert I</u>. Petitioner repeats the arguments he made with respect to the motion for reconsideration of our opinion.  And we reach the same conclusion.  There is no basis to revise or vacate our decision in <u>Seiffert I</u>.  <u>See</u> Fed. R. Civ. P. 60(b).

III.  <u>Conclusion</u>

Petitioner has provided no valid basis for us to reconsider our opinion or vacate or revise our decision in <u>Seiffert I</u>.  Accordingly, we will deny the motions.

We have considered all remaining arguments the parties made and, to the extent not addressed, we find them to be irrelevant, moot or meritless.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.